[No. AO25640. First Dist., Div. Five. June 18, 1985.]

AMERICAN OLEAN TILE COMPANY, Plaintiff and Appellant, v. HORST SCHULTZE et al., Defendants and Respondents.

COUNSEL

Darrel Cameron Horsted and James W. Haworth for Plaintiff and Appellant.

John A. Cost and Parker S. Kelly for Defendants and Respondents.

OPINION

**KING, J.**—In this case we hold that after the execution of a valid marital settlement agreement, negotiated at arms' length and providing a community

business is transferred to the spouse who had been exclusively operating it as his separate property, all obligations of the business incurred thereafter are the sole obligation of the recipient spouse, even though incurred before entry of an interlocutory judgment of dissolution of the marriage incorporating the marital settlement agreement. We further hold that amendments to the Family Law Act providing for the personal liability of a spouse and the liability of separate or community property for debt, which are expressly declared by the Legislature to be applicable to all debts enforced on or after a given date, do not violate due process, even as to debts incurred before the operative date of the amendments.

American Olean Tile Company (American) sued Horst and Irmgard Schultze, whose marriage had been dissolved, for nonpayment of a promissory note executed by Horst on May 6, 1981. The Schultzes had separated on April 1, 1980. On May 1, 1981, they executed a marital settlement agreement dividing their community property; it was incorporated by reference into the interlocutory judgment of dissolution of marriage filed June 19, 1981.

Pursuant to the marital settlement agreement Horst received H & S Tile, a community business, as his separate property. Irmgard received other property. There is no dispute that the marital settlement agreement was an arms' length, negotiated agreement in which the interests of the spouses were adverse and each was represented by counsel. After the separation Irmgard received no support from Horst and no benefits from the operation of his business. She also had no knowledge of any debts Horst incurred after the separation or of his execution of the promissory note. The family home was to be sold and, after payment of community bills, the balance was to be divided between Horst and Irmgard.

After separation, Horst continued to operate the tile business. On May 6, 1981, he signed a promissory note in favor of American for $13,747.80 for unpaid invoices which were merged into the promissory note. Horst failed to make any payments on the note. In August, 1981, American filed a complaint against Horst for the debt incurred for the goods received and for the promissory note. A default judgment against Horst was entered on November 25, 1981. When it became apparent to American that Horst could not be located for satisfaction of the judgment, American obtained an order vacating the original judgment and permitting filing of an amended complaint which claimed former community property held by Irmgard was liable for the unpaid account and the promissory note since both were incurred and executed during her marriage to Horst.

American applied for and was granted a prejudgment attachment of a promissory note, secured by a deed of trust on real property, which was

originally payable to Irmgard and Horst. The promissory note was converted to cash and remained subject to the prejudgment attachment order. The Sheriff of San Mateo County was ordered to hold the proceeds of the note pursuant to the order.

The case was tried May 13, 1983. Horst did not appear. In its decision filed August 10, 1983, the court stated: "The defendants Schultzes entered into a marital settlement agreement May 1, 1981. Defendant Horst Schultze received by the agreement as his separate property the family business known as H & S Tile. On May 6, 1981, defendant Horst Schultze executed a promissory note in favor of plaintiff, the subject of this lawsuit, for purchases he had made prior to that date. The defendant Horst Schultze was dealing with the obligations of his separate property and not community property when he executed the promissory note to plaintiff. Further, any account stated or book account that existed prior to May 6, 1981, was merged into the promissory note executed by defendant Horst Schultze. [¶] Therefore, let judgment as prayed be entered as to Horst Schultze plus costs and attorney fees. [¶] The pre-judgment attachment as to Irmgard Helen Schultze is discharged." A judgment was entered for Irmgard pursuant to the court's decision, and against Horst for $13,932.59 plus interest, attorney fees and costs.

■   American contends the trial court erred in finding that the community property held by Irmgard was not liable for debts incurred by Horst after separation. This argument fails because income earned and obligations incurred after separation in the operation of a separate property business are not community in nature. (See Civ. Code, § 5118; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371].) Here the note was a separate obligation of Horst, having been incurred after the date of separation at a time when the business had become his separate property.

■   When, by execution of a marital settlement agreement, a community property business of the spouses becomes the separate property of one of them, a creditor seeking to enforce a business debt incurred thereafter "will be restricted to satisfaction from the separate property of the debtor spouse, provided: (1) The transmutation agreement was not entered into to defraud an existing creditor of either spouse;[28] and (2) The creditor was not misled to its detriment by the failure of the spouses to inform it that by virtue of an agreement between them the supposed community assets on which the creditor relied were in fact separate assets.[29] [¶] A third-party contract-

---

"[28]*See* Robertson v. Willis (1978) 77 Cal.App.3d 358, 363, 143 Cal.Rptr. 523; Gould v. Fuller (1967) 249 Cal.App.2d 18, 24, 57 Cal.Rptr. 23."

"[29]In re Marriage of Dawley (1976) 17 Cal.3d 342, 357 fn. 11, 131 Cal.Rptr. 3, 551 P.2d 323."

creditor will not be entitled to recover against former community assets transmuted into the separate property of the noncontracting spouse, since the creditor can easily avoid the risk of unknown interspousal transfers by obtaining both spouses' signatures on contracts or notes.[30]" (1 Markey, Cal. Family Law Practice and Procedure (1985) § 5.72[4][c].)

■ American's argument also fails under new statutes governing spouses' liability for debts upon dissolution of a marriage, which were enacted in 1984 and are applicable to this case.

Under the new legislation, separate and community property held by the nondebtor spouse *will not be liable* for debts incurred by the other spouse *unless the nondebtor spouse was assigned the debt* in the division of the property. (Civ. Code, § 5120.160.)[1] This legislation applies to all debts *enforced* on or after the operative date of the amendments (Jan. 1, 1985). (Civ. Code, § 5120.320.)[2]

Therefore, pursuant to Civil Code section 5120.320, the new rule contained in Civil Code section 5120.160 will be effective in cases such as this in which the debtor had not yet satisfied the debt at the time that the amendments became operative. Since Irmgard was not assigned the debt in the interlocutory judgment of dissolution of marriage, she is *not* personally liable for Horst's debt, *nor* is the former community property now held by Irmgard liable for the debt. The trial court's decision was correct both under former law and under the new amendments to the Family Law Act.

---

"[30]*See* Kennedy v. Taylor (1984) 155 Cal.App.3d 126, 130, 201 Cal.Rptr. 779."

[1]Civil Code section 5120.160, subdivision (a), provides in part: "(2) The separate property owned by a married person at the time of the division and the property received by the person in the division is *not liable* for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, *unless the debt was assigned for payment by the person in the division of the property.* Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property. (3) The separate property owned by a married person at the time of the division and the property received by the person in the division *is liable* for a debt incurred by the person's spouse before or during marriage, and the person is personally liable for the debt, *if the debt was assigned for payment by the person in the division of the property.* If a money judgment for the debt is entered after the division, the property is not subject to enforcement of the judgment and the judgment may not be enforced against the married person, unless the person is made a party to the judgment for the purpose of this paragraph." (Italics added.)

[2]Civil Code section 5120.320 states: "Except as otherwise provided by statute, the provisions of this chapter govern the liability of separate and community property and the personal liability of a married person for a debt enforced on or after the operative date of this chapter, regardless whether the debt was incurred before, on, or after the operative date."

■ The Legislature may amend the Civil Code retroactively when "expressly so declared" pursuant to Civil Code section 3.[3] American argues, however, that it would violate due process to apply the amendments concerning liability of marital property to debts incurred before the operative date of the statutory change.

Rather than applying retroactively, these amendments have the effect of prospectively defining, as between spouses and creditors, how enforcement of debts is to be carried out. Even assuming arguendo that the statutory changes constitute a retroactive change, under the circumstances here there is no unconstitutional deprivation of any vested property rights of American.

Even if vested rights are impaired, the impairment of vested property rights may be carried out with due process of law under many circumstances. ■ " ' "The state's inherent sovereign power includes the so-called 'police power' right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. . . . The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment." ' ' (*Addison* v. *Addison* [1965] 62 Cal.2d at p. 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391], quoting Armstrong, *'Prospective' Application of Changes in Community Property Control—Rule of Property or Constitutional Necessity?* (1945) 33 Cal.L.Rev. 476, 495.) [¶] ■ In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former

---

[3]The Legislature has recently enacted several changes in family law expressly declaring their retroactive application to all actions in which the property disposition was not final on the effective date of the legislation. (E.g., Stats. 1983, ch. 342, § 4; Stats. 1984, ch. 1661, § 4 [uncodified sections of legislation adding Civil Code sections 4800.1, 4800.2 and 4800.3].) Most recently, the Legislature enacted Civil Code section 5124, which goes even further. For equitable reasons, this statute enables final judgments to be reopened for a limited period of time to accomplish an equal division of community interests in military pensions which had been awarded to the spouse in the military during the 18 months between a decision of the United States Supreme Court declaring states had no power to award such interests *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] [decided June 26, 1981] and the passage of the Federal Uniform Services Former Spouses' Protection Act (FUSFSPA), 10 United States Code section 1408, effective February 1, 1983, which provides it was the intent of Congress that the states have this power and declares FUSFSPA to be retroactive to June 25, 1981. It would appear that if Congress could pass such legislation retroactively, our Legislature could properly enact Civil Code section 5124 to enable those whose judgments became final during the hiatus to reopen them to assure an equitable distribution of community interests in military pensions, even in judgments which had become final.

law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions. (See generally Reppy, *Retroactivity of the 1975 California Community Property Reforms* (1975) 48 So.Cal.L.Rev. 977, 1048-1049; Note, *Retroactive Application of California's Community Property Statutes* (1966) 18 Stan.L.Rev. 514, 518-519, 521-522; Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation* [1960] 73 Harv.L.Rev. 692; Greenblatt, *Judicial Limitations on Retroactive Civil Legislation* (1956) 51 Nw.U.L.Rev. 540, 559.)" (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 592-593.)

Referring to its opinion in *Addison,* the Supreme Court in *Bouquet* stated: "Nevertheless, we deemed the retroactive application of the legislation a proper exercise of the police power. The state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage, we concluded, justified the impairment of the husband's vested property rights. (See generally *Williams* v. *North Carolina* (1942) 317 U.S. 287, 298 [87 L.Ed. 279, 285-286, 63 S.Ct. 207, 143 A.L.R. 1273].)" (*Id.,* at p. 593.)

■ In the context of marital dissolutions, which are equitable proceedings, courts should give great deference to expressed legislative intent for retroactivity of statutory amendments because of "The state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage. . . ." (*Id.*)

■ American also claims that the trial court erred in failing to award a specific sum for attorney fees against Horst as part of its decision and judgment, although the judgment did award American "costs of suit and attorney fees." This is incorrect, since the attorney fees are an element of costs of suit pursuant to Civil Code section 1717. Thus, American should recover attorney fees against Horst as part of its costs of suit.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.