**In re Sinisha P. CHENICH, Debtor.**

**Eric WOLF, Trustee, Appellant,**

**v.**

**Vidosava CHENICH, Appellee.**

**BAP No. SC–87–1920 VAMo.**
**Bankruptcy No. 84–5060–M7.**
**Adv. No. C86–0327–M7.**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted March 17, 1988.

Decided June 14, 1988.

Jeffry A. Davis, Gray, Cary, Ames & Frye, San Diego, Cal., for appellant.

Gary Appelt, Larkin and Appelt, Vista, Cal., for appellee.

Before VOLINN, ASHLAND and MOOREMAN, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

Appellant, the trustee in bankruptcy, appeals the denial of his motion for partial summary judgment that, pursuant to 11 U.S.C. § 544(b), he may avoid the transfer of community property to appellee, formerly the debtor's spouse, and use the money

to satisfy a judgment against the debtor on a personal injury claim.

The principal issue is the construction and application of Cal.Civ.Code § 5120.160(a)(3).[1] That statute, enacted in 1984, shields community property passing to a spouse in a dissolution from subjection to liability for satisfaction of a judgment for a debt incurred by the other spouse, if the money judgment is entered after the division of property, unless the nondebtor spouse is made a party to the judgment.

The trustee contends that by its terms, Cal.Civ.Code § 5120.160(a)(3) is not applicable to the instant case. First, the statute applies only to divisions of community and quasi-community property made by the court in a dissolution proceeding pursuant to Cal.Civ.Code § 4800; according to the trustee, the division in this case was not made pursuant to section 4800.[2] Second, the statute does not apply to a debt that was "enforced" prior to the effective date of Cal.Civ.Code § 5120.160. The trustee contends that the judgment creditor enforced her debt against appellee's portion of the community property by commencing a collection proceeding prior to the effective date of Cal.Civ.Code § 5120.160. The trustee also presents a challenge to the constitutionality of the statute as applied by the trial court: if the statute is applied retroactively to bar the trustee's avoidance of the transfer of part of the community property to appellee, then it is unconstitutional as a deprivation of a vested property right without due process of law.

1. Cal.Civ.Code § 5120.160(a)(3) (West Supp. 1988) reads, in pertinent part:
 (a) Notwithstanding any other provision of this article, after division of community and quasi-community property pursuant to Section 4800:

 . . . . .

 (3) The separate property owned by a married person at the time of the division and the property received by the person in the division is liable for a debt incurred by the person's spouse before or during marriage, and the person is personally liable for the debt, if the debt was assigned for payment by the person in the division of the property. If a money judgment for the debt is entered after the division, the property is not subject to enforcement of the judgment and the judg-

When the facts are undisputed, the appellate court reviews *de novo* the bankruptcy court's conclusions of law, including its conclusions regarding state law. *In re Washburn & Roberts, Inc.*, 795 F.2d 870, 872 (9th Cir.1986). The bankruptcy court, in a well reasoned memorandum decision, accurately summarized the facts, analyzed the contentions of the parties, and properly applied the law to this case. We adopt the foregoing memorandum decision, appended below, as the opinion of this panel, and affirm the order denying the trustee partial summary judgment.

## APPENDIX

United States Bankruptcy Court

Southern District of California

June 29, 1987

## ORDER

### I

The California legislature recently altered the law to immunize community property passing to an ex-spouse from liability for torts committed by the other spouse before dissolution of the marriage. The Trustee has moved for summary judgment contending that this statutory change cannot affect cases which are in litigation at the time the change became effective and that such retroactive legislation would be unconstitutional. Rejecting both contentions, we deny summary judgment.

ment may not be enforced against the married person, unless the person is made a party to the judgment for the purpose of this paragraph.

2. Cal.Civ.Code § 4800(a) (West Supp.1988) reads, in pertinent part:
 Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this section, the court shall, either in its judgment of dissolution of the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally.

## II

## FACTS

Sinisha P. Chenich ("Debtor") married Vidosava Chenich ("Vidosava") in 1953. The Chenichs filed for divorce on February 19, 1981 but did not separate until June 16, 1982. The Chenichs signed a Marital Settlement Agreement on October 13, 1983. On November 21, 1983 an interlocutory judgment was entered which dissolved the Chenichs' marriage and which approved the Marital Settlement Agreement.

During the divorce proceedings on October 13, 1982, the Debtor was involved in an automobile accident that left Claude Greer permanently injured by the loss of a leg. A lawsuit was filed on November 30, 1982. At the Debtor's deposition on January 28, 1983, Greer discovered that the divorce was pending. Though Vidosava was not named as a defendant in that lawsuit, she had knowledge of it. In May of 1984, after a trial lasting several days, Greer received a judgment for $1,170,000. To enforce this judgment, Greer filed suit in state court against Vidosava to recover the community property that she had received under the Marital Settlement Agreement.

Although Greer's lawsuit was not explicitly mentioned in this agreement, it was provided for therein. The agreement assigned all debts incurred since separation to the spouse who had incurred them. Therefore, under the terms of this agreement Greer's debt was assigned to the Debtor. Under this agreement the Debtor retained sizeable assets. They included:

1. Real property at 529–531 North Elm Street, Escondido, California;
2. Property located at 545–547 North Elm Street, Escondido, California;
3. Property located at 745 Cerro Bonito Drive, Escondido, California;
4. R–2 lots on Lincoln and Metcalf, Escondido, California;
5. Ten acres E–1–20 on Twin Oak Valley Road, San Marcos, California;
6. One ⅛th of 20 acres A–1–2 on Palomar Road, San Marcos, California;
7. Three C–1 lots corner of Pico and San Marcos, California;
8. One-sixth interest in 40 acres, San Marcos, California;
9. A second trust deed on 2.5 acres on Mission Road, San Marcos, California;
10. An interest in Stop Realty.

The Debtor also retained a one-half interest in the following:

1. R–3 lot for 12 units on Elm Street, Escondido, California;
2. 2231–2233–2235 East Valley Boulevard, Escondido, California
3. 2237–2229–2241 East Valley Boulevard, Escondido, California;
4. 2245 East Valley Boulevard, Escondido, California;
5. 1.6 acres commercial lot East Valley Boulevard, Escondido, California;
6. 5 acres between Highway 395 and I–15, Escondido, California;
7. 7.4 acres Rocksprings and planned 26 lot subdivision, San Marcos, California.

Various other properties also were divided up.

As substantial as these retained assets were, they were not enough to satisfy Greer's judgment and meet the Debtor's other obligations. The Debtor filed a Chapter 7 petition on November 21, 1984. He is now deceased. This adversary proceeding was commenced by the Trustee who seeks a turnover under Section 544(b) of the former community property Vidosava received.

The complaint has two counts. The first is for declaratory relief that under California law the former community property is liable for Greer's debt. The second count alleges that this property was fraudulently conveyed to Vidosava to deceive the creditors of the Debtor. The Trustee moved for summary judgment on the first count only. At the hearing held on February 26, 1987, this was taken under submission.

## III

## DISCUSSION

The standard for granting summary judgment motions is clear. Summary judg-

ment is appropriate only where there are no material issues of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) and Bankruptcy Rule 7056; *In re Stuerke*, 61 B.R. 623, 625 (9th Cir. BAP 1986). Neither party appears to seriously contest any material issue of fact. The disputed issues herein are solely questions of law.

Section 544(b) of the Bankruptcy Code puts the Trustee in the position of an actual unsecured creditor who can under applicable non-bankruptcy law avoid a transfer of property by the debtor. *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222, 1226 (8th Cir.1987).[1] Therefore, this case is governed by California community property law and hinges on whether Greer could avoid the transfer of community property to Vidosava in the absence of bankruptcy.

Prior to January 1, 1985, Greer would have prevailed. See Legislative Committee Comment to Cal.Civ.Code § 5120.160. The California Supreme Court had held former community property liable for a judgment obtained after the divorce. *Bank of America, Etc. Ass'n. v. Mantz*, 4 Cal.2d 322, 326, 49 P.2d 279 (1935). Community property was liable for the debts of either spouse incurred during the marriage. See Legislative Committee Comment to Cal.Civ.Code Section 5120.150 and 17 Cal.L.Rev.Comm. Reports 1, 22 n. 59 (1984). This was true regardless of whether the debt was incurred on behalf of the community. *Mayberry v. Whittier*, 144 Cal. 322, 325, 78 P. 16 (1904); *Harley v. Whitmore*, 242 Cal. App.2d 461, 471, 51 Cal.Rptr. 468 (1966). This rule applied to a debt arising from a tort. *Vest v. Superior Court*, 140 Cal. App.2d 91, 95, 294 P.2d 988 (1956). The only recourse available to a nondebtor spouse was an action for reimbursement against the other spouse. This was true even where the property division assigned the debt to the other spouse. 17 Cal.L.Rev. Comm. Reports, *supra* at 22.

1. We note that the Trustee's complaint did not raise the question of whether the transfer of the community property to Vidosava is avoidable as

The California legislature found this scheme to be unsound. It created procedural burdens of tracing and led to valuation problems. 17 Cal.L.Rev.Comm. Reports, *supra* at 23. The nondebtor spouse was entitled to any increase in value in property beyond the equity of the community as of the date of entry of the final decree of divorce. *Ryan v. Souza*, 155 Cal.App.2d 213, 216, 317 P.2d 655 (1957). This included rents. *Id.* at 216, 317 P.2d 655. The practical difficulties of this approach led to legislative change.

Community property remains liable during marriage for the debts of either spouse primarily for administrative reasons. This avoids the serious administrative problem of characterizing the type of property and debt, partitioning the community property and gives the greatest insurance that creditors will be paid. Cal.L.Rev.Comm. Reports, *supra* at 23.

The California legislature enacted a new law which made community property received by a spouse in the dissolution of a marriage liable for a debt incurred by the other spouse during the marriage only if the debt is assigned to the nondebtor spouse for payment. Cal.Civ.Code Section 5120.160(a)(3). If a money judgment for a debt is entered after the division of property, it is not enforceable against the nondebtor spouse or the community property she received unless she is made a party to the judgment. Cal.Civ.Code Section 5120.-160(a)(3). Vidosava was not a party to the judgment Greer received.

If this statute is applicable in the instant case, Vidosava must prevail. Greer has three main arguments against this: (1) this statute does not apply to marital settlement agreements; (2) under the transitional rules this statute does not apply to the instant case; and (3) if this statute applies, it is unconstitutional as a retroactive taking of property which violates due process. We reject all three contentions.

 Cal.Civ.Code Section 5120.160 is applicable to the division of community and

a preference to an insider under 11 U.S.C. § 547(b). Accordingly, we do not address this issue.

quasi-community property pursuant to Cal. Civ.Code Section 4800. Section 4800 directs the divorce court in dissolving a marriage to divide the community property of the spouses equally except upon the written agreement of the parties. The court is given no discretion to adjust the division of assets to reflect equitable considerations unless the parties have a written agreement. Legislative Committee Comment to Cal.Civ.Code Section 4800.

Greer contends that the phrase "except upon the written agreement of the parties" should take all written agreements out of Cal.Civ.Code Section 4800. There is nothing in the legislative history of either Cal. Civ.Code Section 4800 or Section 5120.160 to support this view. If such a contention were the law, any division that was not exactly equal would render either spouse liable for the debts of the other. As a practical result such an interpretation would force the divorce courts to divide up the property of virtually every divorcing couple and waste a substantial amount of judicial time. Every divorce would result in a trial because any settlement would be too risky.

It would also frustrate the legislature's intent in enacting Civil Code Section 5120.-160. The legislature intended to end the liability of community property for debts upon the dissolution of the marriage. 17 Cal.L.Rev.Comm.Reports, *supra* at 23. Further, the legislature was concerned about the due process rights of the non-debtor spouse. *Id.* at 24. Unless she was made a party to the creditor's judgment, her due process rights would be violated. *Id.* at 24. There was less concern expressed for the rights of the creditors who received a judgment after the division of property and dissolution of the marriage.

■ This concern was reflected in the transitional rules. The operative date of Cal.Civ.Code Section 5120.160 was January 1, 1985. Cal.Civ.Code Section 5120.310. The new law applied to all debts enforced on or after the operative date "regardless of whether the debt was incurred before,

on, or after the operative date." Cal.Civ. Code Section 5120.320. The legislative history states that the general rule is that this chapter applies immediately to all debts regardless of the time they were incurred. Legislative Committee Comment to Cal. Code Section 5120.320. The transition is intended to be immediate and administratively easy to enforce even if somewhat draconian.

The Trustee contends that Greer enforced his debt before January 1, 1985. He argues that the filing of a complaint is the enforcement of a debt. Vidosava contends that the enforcement of a debt means the same thing as the satisfaction of a judgment. There is no statutory definition of the enforcement of debts. The only court to interpret Cal.Civ.Code Section 5120.160 interpreted the word "enforced" to mean the same as satisfied. *American Olean Tile Co. v. Schultze*, 169 Cal.App.3d 359, 365, 215 Cal.Rptr. 184 (1985). This is the most logical approach.

The word "enforced" used in connection with the word "debts" is not a term of art. The lack of either a statutory or case law definition underlines this. There are scattered references in the case law to a "right to enforce a debt," *Walker v. Community Bank*, 10 Cal.3d 729, 733, 111 Cal.Rptr. 897, 518 P.2d 329 (1974); "creditors ... seeking to enforce a debt," *Estate of Dabney*, 37 Cal.2d 672, 677, 234 P.2d 962 (1951), and "one action may be maintained to enforce a debt," *Gnarini v. Swiss American Bank*, 162 Cal. 181, 184, 121 P. 726 (1912).[2] It would seem that maintaining an action to enforce a debt cannot be the same as enforcing it. Anyone can bring an action. If filing suit were the same as the enforcement of a debt, many debts would be enforced (by filing) that later were found to be invalid by a judgment adverse to the alleged creditor.

Without a final judgment, this court cannot envision any way in which Greer could have enforced his debt. Therefore, Greer had not enforced his debt against the community property that had passed to Vidosa-

**2.** The cases cited by the Trustee in his briefs of February 24, 1987 and March 9, 1987, for the meaning of the word "enforced" fail to shed any clear light on the question.

va before January 1, 1985. Therefore, he is barred from doing so. Since the Trustee is standing in Greer's shoes, he too is barred by the change in this law.

### B. *Retroactive Legislation*

The Trustee argues that his right to enforce Greer's debt has been retroactively abolished by the California legislature. In this contention he is correct. From it he deduces that such a retroactive change is unconstitutional as a violation of the due process clause of the Fifth Amendment. *See In re Blumer*, 66 B.R. 109, 113–114 (9th Cir. BAP 1986). In this he is wrong.

The legislature has the right to define property rights as a part of its police power. The legislature can alter its laws and radically change the definition of property rights and the manner in which they can be controlled and transferred. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 239–40, 104 S.Ct. 2321, 2328–29, 81 L.Ed.2d 186 (1984). When a court by a judicial decision affects vested rights, it cannot act retroactively. *See Hughes v. Washington*, 389 U.S. 290, 294 (1967) and 389 U.S. at 295, 88 S.Ct. 438, 441, and 88 S.Ct. at 441–42, 19 L.Ed.2d 530 (Steward, J. concurring).

A legislature can limit the right to collect damages for torts. *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 88 n. 32 and 84–88, 98 S.Ct. 2620, 2638 n. 32 and 2636–38, 57 L.Ed.2d 595 (1978). A retroactive statute is presumed to be constitutional. *United States v. Northeastern Pharmaceutical*, 810 F.2d 726, 733 (8th Cir.1986).

The burden is on the party complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. *Id.* at 733. The Trustee does not meet his burden here.

The Trustee's sole attack is a generalized statement that because creditors would be deprived of payment their due process rights are violated. (Brief of January 9, 1987, pp. 13–17). This is not enough to carry the burden of proof that the legislature acted arbitrarily and irrationally in making the operative date applicable to all

debts not yet enforced regardless of when they were incurred.

Retroactive applications of statutes such as the Black Lung Benefits Act of 1972, 30 U.S.C. § 901, *et seq.* and CERCLA, 42 U.S.C. § 9604 and 9607(a), have been upheld as rational cost spreading measures to remedy the problems of black lung and toxic waste disposal. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729–30, 104 S.Ct. 2709, 2717–18, 81 L.Ed. 2d 601 (1984). Retroactive application has been upheld for income tax statutes. 467 U.S. at 731, 104 S.Ct. at 2718–19. Retroactive statutes confined to short and limited periods have been characterized by the Supreme Court as "a customary congressional practice." *United States v. Darusmont*, 449 U.S. 292, 297, 101 S.Ct. 549, 552, 66 L.Ed.2d 513 (1981).

The dissolution of a marriage in a community property state raises the question of what obligations former community property continue to be liable. For administrative reasons the rules governing community property during the marriage had been extended past the dissolution of the marriage. 17 Cal.L.Rev.Com.Reports, *supra*, at 22–23. This scheme proved unsound. *Id.* at 23. Consequently, it was altered by the legislature.

The legislature decided not to create a long transition period which it could have done by altering the law only for debts incurred after the operative date. Instead it opted for the fastest transition constitutionally possible by altering the law for all debts not enforced, i.e., satisfied, by the operative date. Cal.Civ.Code Section 5120.-320. Since Greer's debt was not enforced by the operative date, Greer's rights to seek satisfaction out of the community property received by Vidosava vanished.

We note that Greer had filed a lis pendens on some or all of the former community property. However, a lis pendens is not a lien in the property or a vested right. It is merely a notice of litigation which is dependent upon the outcome of that litigation. One cannot foreclose upon a lis pendens, only upon a lien. For a lis pendens to

give one vested rights, one must first obtain a final judgment. This the new law makes impossible unless the holder of the property is a party to the suit.

For the reasons set forth above, this Court denies the Trustee's motion for summary judgment on the first count. The counsel for Vidosava is directed to prepare within ten (10) days from the entry of this decision an order consistent with this decision.