**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Plaintiff–Appellee,**

**v.**

**John L. MOLINARO, Defendant–Appellant.**

**No. 87–6593.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1989.

Memorandum filed Nov. 3, 1989.

Withdrawn April 9, 1990.

Opinion Issued as Amended April 24, 1990.

---

**2.** Only eight Justices took part in the consideration of the case.

M. Jean Starcevich, San Jose, Cal., for defendant-appellant.

J. Michael Echevarria, Lawler, Felix & Hall, Los Angeles, Cal., for plaintiff-appellee.

Before HUG, HALL and WIGGINS, Circuit Judges.

## OPINION

WIGGINS, Circuit Judge:

John L. Molinaro appeals from a summary judgment entered against him in this action brought by the Federal Savings and Loan Insurance Corporation (FSLIC) for recovery of a two million dollar dividend. As a director and the sole shareholder of a federally insured savings and loan association, Molinaro authorized and received the dividend. The district court found that the dividend was improperly paid out of a restricted account. Molinaro contends that the federal courts lack jurisdiction of this case and that the dividend was not unlawful. We affirm.

## BACKGROUND

In April 1984 Molinaro and Donald Mangano purchased Ramona Savings and Loan Association (Ramona), a California state-chartered, federally insured savings and loan institution. After purchasing Mangano's interest in May 1985, Molinaro became Ramona's sole shareholder. Thereafter Molinaro served as Ramona's chief executive officer and chairman of the four member board of directors. In April 1986 Molinaro became president of Ramona.

On May 9, 1986, Ramona's board of directors authorized a two million dollar payment to Molinaro. The board expressly directed that the payment be made from Ramona's paid-in-surplus account. Molinaro instructed Ramona's controller to debit paid-in surplus and to designate the payment as nontaxable.

In June 1986 the Federal Home Loan Bank Board (FHLBB) began an investigation of Ramona's financial records and business practices. The California Department of Savings and Loan (CDSL) joined the FHLBB in this investigation. The examiners discovered that Ramona had improperly recorded substantial profits from 1985 sales of Ramona-owned real estate. On August 4, 1986, the FHLBB and CDSL examiners met with Molinaro. They reported that after making adjustments for the improperly recorded gains, Ramona

would not satisfy the minimum statutory net worth requirement and would be insolvent. Molinaro was also informed that the paid-in surplus account was an improper source for the two million dollar payment made to him in May. The FHLBB then advised Ramona's board of directors to order Molinaro to return the two million dollars because the payment had materially contributed to Ramona's insolvent condition.

On August 21, 1986, Ramona's board of directors adopted a resolution reclassifying the two million dollar payment as being paid out of unreserved earned surplus and restoring the two million dollars to the paid-in surplus account. Ramona's controller adjusted the books and records to conform with this resolution. Molinaro did not in fact return any money.

On September 12, 1986, FSLIC was appointed receiver of Ramona. In its receivership capacity, FSLIC assigned the right to pursue claims against Ramona's former officers and directors to FSLIC in its corporate capacity. On September 16, 1986, FSLIC filed this lawsuit in federal district court. Three of the eight claims against Molinaro were based on his authorization and receipt of the two million dollar payment. On March 30, 1987, the district court granted FSLIC's motion for summary judgment in the amount of two million dollars, plus interest, against Molinaro on those claims. On September 14, 1987, the court entered final judgment against Molinaro. Molinaro timely appealed.

## DISCUSSION

This court reviews a grant of summary judgment de novo to determine whether there exists any genuine issue of fact and whether the district court correctly applied the substantive law. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

### A

■ The recent Supreme Court decision in *FSLIC v. Ticktin*, —— U.S. ——, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989), disposes of Molinaro's contention that the federal courts lack jurisdiction over this case. The Court analyzed whether 12 U.S.C. § 1730(k)(1) (1982) limits federal jurisdiction in cases commenced by FSLIC. The Court began by observing that 28 U.S.C. § 1345 (1982) confers federal jurisdiction over cases commenced by a federal agency such as FSLIC. Section 1730(k)(1)(A), in fact, expressly confers federal agency status on FSLIC. Clauses (B) and (C) of this section provide that any civil suit in which FSLIC is a party is deemed to arise under the laws of the United States and that FSLIC has the right to remove such action to the federal court. This section also contains a proviso withdrawing federal jurisdiction in cases in which FSLIC is a party in its receivership capacity and the suit "involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law." 12 U.S.C. § 1730(k)(1). The Court held that the proviso operates as a limit on the grant of federal question jurisdiction under clauses (B) and (C), but that "the proviso does not extend to clause (A) and the agency jurisdiction conferred by § 1345." *Ticktin*, 109 S.Ct. at 1628. Since FSLIC commenced this action, the proviso does not apply and we have jurisdiction.

### B

■ California savings and loan associations are subject to the provisions of the Financial Code and those provisions of the Corporations Code that are not inconsistent with the Financial Code. Cal.Fin.Code § 6500 (West Supp.1989). At the time the May 1986 payment was made, Cal.Fin.Code § 6522 provided that:

> An association may declare and pay dividends on capital stock ... out of the unreserved and unrestricted earned surplus of the association ... except when the association has failed to maintain the minimum required level for statutory net worth and except when the association is in an impaired condition or when the payment of the dividend would cause the association to be in an impaired condition.

*Id.* § 6522(a) (1983 Cal.Stat. 3923) (amended 1987). We find that the May 1986 payment to Molinaro violated section 6522 because it was made from the paid-in surplus account, rather than the earned surplus account specified in the statute.[1]

A corporate director is generally liable for payment of an illegal dividend.[2] *See* Cal.Corp.Code § 316(a)(1) (West Supp.1989) (a director is liable to the corporation for any distribution to a shareholder that is prohibited by the corporations code). A shareholder can also be held liable for the amount of an improper distribution if he receives the distribution with knowledge of the facts indicating its impropriety. *See* Cal.Corp.Code § 506(a) (West 1977) (amended 1987) (a shareholder is liable to the corporation if he receives a distribution prohibited by the corporations code with knowledge of the facts indicating its impropriety). Molinaro contends that summary judgment was improper because triable issues of fact exist regarding his knowledge as a shareholder. Molinaro, however, clearly knew that the distribution was made from the paid-in surplus account. Thus Molinaro had knowledge of the facts indicating the impropriety of the distribution. *See England v. Christensen*, 243 Cal.App.2d 413, 52 Cal.Rptr. 402, 413–14 (1966) ("with knowledge of facts indicating the impropriety" does not mean that the shareholders must actually have known that the transaction was unlawful; it means only that they must have been aware of the facts which, under the law, made the transaction unlawful).

 Finally, the "corrective action" taken by Ramona's board of directors on August 21, 1986, did not relieve Molinaro of liability for the May payment. Molinaro did not repay the two million dollars to the paid-in surplus account and then withdraw it from the proper account, nor did he demonstrate that at the time of the August action there were sufficient funds in the earned surplus account to restore to the paid-in surplus account. Having authorized and received an illegal dividend, Molinaro is obligated to repay it.

## CONCLUSION

The judgment of the district court is AFFIRMED.

---

1. The district court did not decide whether, at the time of the two million dollar payment, Ramona met the financial requirements for paying a dividend under section 6522. In finding a violation of that statute, the court relied exclusively on the source of the payment. FSLIC argues that, in fact, Ramona was in an impaired condition at the time the payment was made and that Molinaro's authorization of the distribution was unlawful under section 6522 for that reason as well. We need not reach this issue because we determine that payment of the dividend from the paid-in surplus account violated section 6522. No contention was made in the district court or on appeal that any other provision of the Financial Code or the Corporations Code authorized the payment of a dividend from paid in surplus.

2. A corporate director incurs no liability if he acts in good faith and relies on the advice of experts. Cal.Corp.Code § 309 (West 1977) (amended 1987). Molinaro contends that summary judgment was improper because triable issues of fact exist regarding a defense of good faith and reasonable reliance. Molinaro, however, offered no evidence that any expert advised him on the propriety of paying dividends from the paid-in surplus. He argues that he relied on financial statements prepared by Ramona's accountant in authorizing the dividend. This argument, however, concerns Ramona's solvency, not the source of the payment. Molinaro clearly knew that the payment was made from the paid-in surplus account. Furthermore, in a letter to Ramona's board of directors, dated March 11, 1985, Ramona's counsel addressed the law applicable to the payment of dividends. Counsel stated that "[u]nder section 6522 ... the Association may make distributions out of its unrestricted retained earnings...." Supplemental Excerpts of Record # 145 at 5.