**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,**
Plaintiff–Appellee,

v.

**John L. MOLINARO, et al.,**
Defendants,

and

**Kurahara & Morrissey, Real Party in Interest–Appellant.**

No. 88–6216.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1989.

Decided Jan. 17, 1991.

Michael T. Morrissey, Joseph R. Kafka, Kurahara & Morrissey, San Jose, Cal., for real party in interest-appellant.

Carol Burney, Lawler, Felix & Hall, Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN, Chief Judge, SCHROEDER and O'SCANNLAIN, Circuit Judges.

SCHROEDER, Circuit Judge:

Michael Morrissey and Kurahara & Morrissey, a law firm, appeal from a district court order imposing Rule 11 sanctions against them. The court imposed the sanctions after it had determined that the counterclaims they had filed against the Federal Savings & Loan Insurance Corporation (FSLIC) were barred by the doctrine of sovereign immunity. The appellant's client, Kimberleigh Ferm, had been married to John Molinaro, a former officer and director of the failed Ramona Savings & Loan Association. FSLIC's claims against Ferm, and her sanctioned counterclaims at issue in this appeal, briefly occupied a very small corner of the stage where FSLIC, Molinaro and other defendants litigated the financial liability of the officers and directors for Ramona's defalcations. *See Federal Savings and Loan Insurance Corporation v. Ferm,* 909 F.2d 372 (9th Cir.1990); *Federal Savings and Loan Insurance Corporation v. Molinaro,* 901 F.2d 1490 (9th Cir.1990).

FSLIC originally instituted the underlying action in September of 1986, and did not name Ferm as a party. The amended complaint, filed in June of 1987, contained two claims against Ferm along with 39 other claims against various defendants, including Molinaro. The claims against Ferm alleged that she engaged in a conspiracy with Molinaro, through certain property transfers, to prevent FSLIC from recovering property which belonged to Molinaro.

On September 14, 1987, the district court entered summary judgment in favor of FSLIC and against Molinaro in the amount of more than $2 million. In still another judgment, also against Molinaro, entered approximately two months later, the district court awarded FSLIC an additional $6.4 million plus interest. Neither of these judgments ran against Ferm, and Ferm did not participate in the proceedings which led up to them.

FSLIC moved for summary judgment against Ferm in January of 1988. In response, Ferm moved, pursuant to Fed.R. Civ.Pro. 12, to dismiss FSLIC's claims against her on the ground that the transfers were not subject to the law of fraudulent conveyances because they were transfers of community property by way of a marriage settlement. On March 7, 1988, the district court denied Ferm's motion to dismiss FSLIC's claims against her. The court, significantly and expressly, did not treat her motion as a motion for summary judgment and thus did not enter any judgment at that time in favor of FSLIC and against Ferm. The March 7 order dealt with eight different pending motions and included an order that the funds being held by the clerk be paid over to FSLIC in partial satisfaction of FSLIC's judgments against Molinaro which had not been superseded.[1]

1. The order reads, in pertinent part:
MOTION(S) PENDING:
1) Defendant Ferm's Motion to Dismiss Plaintiff's First Amended Complaint as Supplemented for Failure to State a Claim
2) Plaintiff's Motion to Supplement the First Amended Complaint
3) Defendant Trapani's Motion to Dismiss Count 35 of the First Amended Complaint
4) Plaintiff's Motion for Summary Judgment against Defendant Trapani on Count 35 of the First Amended Complaint
5) Plaintiff's Motion for Entry of Final Judgment against Defendant Trapani
6) Plaintiff's Motion for a Charging Order
7) Plaintiff's Motion for an Order Directing Payment of Monies Held by Clerk to Plaintiff
8) Defendant Molinaro's Motion for Leave to File a Third–Party Complaint

1. The Court denies Ferm's motion to dismiss.
Transfers of community property by way of a marriage settlement agreement are subject to the law of fraudulent conveyances. *See* Cal. Civ.Code § 5120.320; *American Olean Tile Co. v. Schultze,* 169 Cal.App.3d 359, 364, 215 Cal. Rptr. 184 (1985). Therefore, FLSIC has stated a valid claim for relief.
The Court declines to treat defendant Ferm's motion as one for summary judgment.

   \*    \*    \*    \*    \*

7. The Court grants plaintiff's motion for an order directing that funds now deposited with the Clerk be paid to plaintiff. This Court has entered final judgments against Molinaro in the amount of $8.4 million plus interest. Without a supersedeas bond, Molinaro is not

Much confusion in this appeal has been generated by the suggestion on the part of FSLIC, apparently accepted by the dissent, that the March 7 order was an adjudication of the merits of the dispute between FSLIC and Ferm concerning the funds that had been deposited with the Clerk. It was not such an adjudication. What the order did, in fact, was to deny Ferm's motion to dismiss and to permit FSLIC to supplement its claims against Ferm. The March 7 order also granted FSLIC's motion to direct the funds to be paid to FSLIC. The district court thereby rejected Ferm's position, as stated in her opposition to FSLIC's motion, that no such order should issue until there had been adjudication of her claims to the money. The March 7 order did not decide or even consider the merits of those claims.

Subsequently, FSLIC filed the supplemental complaint that the order contemplated. Later, in March of 1988, Ferm answered this supplemental complaint. She also raised the now sanctioned counterclaims against FSLIC in order to assert her claims to the money that by now had been paid by the Clerk to FSLIC pursuant to the March 7 order.

Ferm's counterclaims were therefore not an effort to relitigate matters previously decided in the March 7 order. At the sanctions hearing, the district court made it clear that the sanctions were not a response to Ferm's decision to assert her counterclaims at this point in the case. When counsel for Ferm pointed out that Ferm's claims had become ripe only as a result of the very recent transfer of funds to FSLIC, the district court said "I quite agree with you, insofar as the timing of the

claim and nobody suggests that anyone is to be sanctioned for that."

The district court entered its ruling on the merits of Ferm's claim in the same order in which the district court imposed sanctions. The order stated as follows:[2]

1. The Court grants plaintiff's motion to dismiss defendant Ferm's First Amended Counterclaim and Cross–Claim with prejudice. Ferm's pleading is procedurally unauthorized to the extent that she did not obtain leave of Court to file it. See Fed.R.Civ.P. Rules 13(e), 14(a) and 15(a). Furthermore, Ferm's claims against FSLIC for fraudulent conveyance, abuse of process, trespass and conversion are barred by the doctrine of sovereign immunity as they are torts arising outside the scope of the Federal Tort Claims Act, 28 U.S.C. § 1371, et seq. See FDIC v. Citizens Bank & Trust Co., 592 F.2d 364, 371 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); Colony First Federal Savings & Loan Association v. FSLIC, 643 F.Supp. 410, 416 (C.D.Cal.1986).

2. The Court grants plaintiff's request for the imposition of Rule 11 sanctions. Ferm's claim merits sanctions on the grounds that it is frivolous, legally unreasonable and without factual foundation. See Hewitt v. City of Stanton, 798 F.2d 1230, 1232 (9th Cir.1986).

Accordingly, the law firm of Kurahara & Morrissey shall pay the sum of $5641.00 to plaintiff not later than May 16, 1988.

The court thus made no underlying findings of fact as to the merits of Ferm's claims. The basis articulated for dismissal of those claims was sovereign immunity. In addition, at the hearing the district court

entitled to a stay of the judgments. Fed.R. Civ.P. 62(d); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977).

Molinaro's Sixth Amendment right to counsel of choice in his criminal action is a qualified right. Ability to pay is a valid qualification, and the possibility exists that a creditor may obtain a lien against a criminal defendant's property, thus preventing him from hiring counsel of choice. *In re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637 (4th Cir. 1988) (en banc) (overruling *United States v. Harvey*, 814 F.2d 905 (4th Cir.1987)).

FSLIC's proposed order will be amended to provide for payment to plaintiff of the amount currently on deposit.

2. Although the court's order was entered in the same form as the original tentative ruling and its first sentence states as one basis for dismissal of the counterclaims that they were procedurally defective, FSLIC agrees on appeal that the district court's statements in the transcript as to the propriety of the time of the filing control, and there is no procedural impropriety supporting the sanction order.

indicated that it considered Ferm's claims of fraud and conspiracy against FSLIC to be without merit because FSLIC, in receiving the property in question, was acting pursuant to a court order stating that Molinaro had no claim to the property and that it could therefore be turned over to FSLIC. These two purported justifications for sanctions involve fundamentally legal issues: sovereign immunity of FSLIC and the extent to which the earlier orders in FSLIC's claims against Molinaro barred Ferm's claims as well.

We review the district court's sanctions under Rule 11 for abuse of discretion. A district court necessarily abuses its discretion when it bases sanctions on an erroneous view of the law. *See Cooper & Gell v. Hartmarx Corp., et al.,* —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). Sanctions are inappropriate where counsel has made a good faith argument for the "extension, modification or reversal of existing law" and where the legal arguments put forth are not frivolous. Fed.R. Civ.Pro. 11. *See Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1539 (9th Cir.1986); *see also* Advisory Committee Notes on 1983 Amendment to Rule 11 ("The Rule is not intended to chill enthusiasm or creativity in pursuing factual or legal theories.").

We consider first the district court's conclusion that Ferm's legal argument on sovereign immunity was frivolous. We conclude that Ferm's position was not frivolous. Ferm at the very least plausibly argued that Congress had waived sovereign immunity for lawsuits against FSLIC pursuant to the "sue and be sued" provision of 12 U.S.C. § 1725(c)(4). In *Woodbridge Plaza v. Bank of Irvine,* 815 F.2d 538, 542–543 (9th Cir.1987), we held that the FTCA was not the only applicable waiver of sovereign immunity in suits against the Federal Deposit Insurance Corporation (FDIC); the "sue and be sued" language of 12 U.S.C. § 1819(a) acted as a general waiver. The same language is in section 1725(c)(4). The FDIC and FSLIC have served similar purposes. In fact, FSLIC has recently been succeeded in interest by the FDIC. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 215, 103 Stat. 183, 252; *FSLIC v. Butler,* 904 F.2d 505 (9th Cir.1990). Ferm, therefore, could reasonably argue that our holding in *Woodbridge Plaza* should apply to FSLIC as well.

Second, we consider FSLIC's contention that it could not be liable to Ferm because the issue of its right to the funds had already been adjudicated. This argument misses the mark because none of the preceding orders in the litigation had ever adjudicated Ferm's claims to the property. When the government moved to dismiss her claims on the ground of sovereign immunity, she had the first and only opportunity to have the district court look at the justiciability and the justice of her claims.

Ferm's principal claims, that FSLIC obtained funds that belonged to Ferm through conspiracy and abuse of process, are not patently without foundation. Since the court's order authorized FSLIC to take possession of funds belonging to Molinaro, not to Ferm, and since the court never expressly resolved the issue of Ferm's interest in the $498,000.00 conveyed to FSLIC, Ferm could plausibly argue that the order did not give FSLIC the authority to take possession of that money. Since neither Ferm nor New Trend, the corporation from which the funds were paid out, received any consideration in return for the transfer, Ferm could argue that FSLIC's receipt of that money constituted a fraudulent conveyance under California law. *See* Cal.Civ.Code § 3439.04(b) (transfer without consideration constitutes fraud upon creditors, irrespective of intent). Any agreement between FSLIC and New Trend in conjunction with this transfer would thus be a conspiracy to defraud Ferm. Similarly, it could constitute abuse of process for FSLIC to obtain a writ of execution to acquire property that it knew might belong to Ferm. *See Spellens v. Spellens,* 49 Cal.2d 210, 317 P.2d 613, 625–26 (1957) (en banc). Ferm's claims of conspiracy and abuse of process were not so groundless as to warrant the imposition of sanctions.

The district court's order imposing Rule 11 sanctions is REVERSED.

GOODWIN, Chief Judge, concurring:

Because the collateral estoppel basis for the sanctions expressed by the district court does not fully support the sanctions imposed, I concur in Judge Schroeder's opinion. My concurrence should not, however, be construed as an invitation to counsel to continue to plead the kind of frivolous claims that were interspersed with one or two colorably nonfrivolous claims, as revealed in this record.

O'SCANNLAIN, Circuit Judge, dissenting:

Respectfully, I dissent.

### I

"It is now clear that the central purpose of Rule 11 is to deter baseless filings in the District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2454 (1990); *see also Pavelic & LeFlore v. Marvel Entertainment Group*, — U.S. —, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989) (Marshall, J., dissenting) ("One of the fundamental purposes of Rule 11 is to strengthen the hand of the trial judge in his [or her] efforts to police abusive litigation practices and to provide him [or her] sufficient flexibility to craft penalties to each case."). Management of complex litigation often depends on the power of the trial court to sanction attorney behavior in those rare instances where it is necessary to do so. In my view, Rule 11 sanctions played a crucial role in this blockbuster case ably managed by Judge Stotler, who used her authority with appropriate discretion.

The Supreme Court has recognized that the district court is in the best position to determine the propriety of Rule 11 sanctions. "A district court's ruling that a litigant's position is well grounded and legally tenable for Rule 11 purposes is ... fact-specific." *Id.* at 2460. Moreover, "[d]eference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them." *Id.*

This case well illustrates the propriety of these principles. As of April 1989, the sixty-seven-page docket sheet in this case reflected over 2,300 entries. The present litigation is anything but "streamlined." Moreover, one cannot help but note the irony underlying this entire litigation. The FSLIC essentially charges that John L. Molinaro (and, to some extent, Kimberleigh Ferm) has spent years creating trails of paper to hide his fraudulent dealings while director of Ramona Savings & Loan. The paper war seems to have continued in the district court and has apparently enlisted some of the attorneys in its frenzy.[1] Seldom has this court's need to reinforce the "front lines of litigation"—the district court—been more apparent than in the present case.

With the foregoing in mind, I turn to the merits of the appeal by Michael T. Morrissey, Ferm's attorney, and his law firm, against whom the sanctions were imposed.[2]

---

**1.** The procedural posture of this ongoing litigation is complicated, at best. Ferm was not initially named as a party in FSLIC's original complaint. When FSLIC amended its complaint on June 1, 1987, however, Ferm was added as a party. On October 28, 1987, the district court issued a preliminary injunction against Ferm, restraining her from transferring assets during the pendency of the action. Ferm has separately appealed this order.

There appear to be perhaps a dozen appeals which have been filed in this court arising out of this litigation. For example, see *FSLIC v. Ferm*, 909 F.2d 372 (9th Cir.1990); *FSLIC v.*

*Molinaro*, 901 F.2d 1490 (9th Cir.1990); *FSLIC v. Molinaro*, 889 F.2d 899 (9th Cir.1989); *FSLIC v. Ferm*, 881 F.2d 1083 (9th Cir.1989) (memorandum disposition). And, of course, as the parties well know, this litigation is still going strong in Judge Stotler's court today.

**2.** Of course, sanctions against the law firm must be reversed, as Rule 11 sanctions may be imposed only upon the signer of a pleading or paper, and not upon the attorney's law firm. *See Pavelic & LeFlore*, — U.S. at —, 110 S.Ct. at 458–59.

## II

Our court has identified two separate and independent grounds for the imposition of Rule 11 sanctions. First, sanctions "*must* be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'" *Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1140 (9th Cir.1990) (emphasis added). Although I suspect that Ferm's counsel may have violated both prongs of Rule 11, the district court considered primarily the frivolousness prong.[3] In any event, the district court was correct; the filing was frivolous and Morrissey, for having signed it, was properly sanctioned.[4]

### A

Ferm's counterclaim and cross-claim was sanctionable as an unjustifiable (and therefore frivolous) collateral attack on the district court's earlier orders, including specifically the March 7 order. When FSLIC moved on February 1, 1988 for an order allowing it to take possession of the monies placed in the court clerk's custody, Ferm specifically opposed the motion on the

3. Notably, at the hearing concerning the motion for sanctions, Judge Stotler indicated that "it also appears that there may be even improper purpose in it's [sic] [the cross-claim and counterclaim] bringing."

4. The majority and I are not in complete disagreement on all aspects of this case. First, the majority's implicit insinuation that the district court's order granting sanctions was less than lucid is correct. However, a lack of lucidity, while disfavored, will not automatically require reversal of sanctions. *Cf. Teamsters Local Union No. 760 v. United Parcel Serv., Inc.*, 921 F.2d 218 (9th Cir.1990) (affirming imposition of sanctions, even where appellate review was "severely hampered by the fact that the district court's order awarding sanctions did not discuss the relevant substantive law"). Here, the order's lack of specificity is not fatal, since the district court set forth its reasoning in great detail at the motion hearing prior to entering its summary order.

I also agree with the majority that Ferm's sovereign immunity argument, standing alone, is not sanctionable. Indeed, the district court made it very clear at the motion hearing that sovereign immunity was not the basis for the imposition of sanctions. Indeed, the district court did not pursue the sovereign immunity issue with counsel, focusing primarily on the preclusive effect of her prior orders.

ground that $489,000 of the funds were her separate property. The district court in its March 7 order considered, *and rejected*, Ferm's opposition. Ferm's counterclaim and cross-claim coming three weeks later is a blatant attempt to obtain indirectly what was clearly denied her directly.[5]

We have consistently upheld the imposition of sanctions based upon a party's attempts to relitigate the same issue before a district court. In *Pipe Trades Council, Local 159 v. Underground Contractors Ass'n*, 835 F.2d 1275 (9th Cir.1987), we upheld sanctions imposed upon a party who filed a repetitious motion, albeit styled as a "different" type of motion. *See id.* at 1280–81; *see also Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir.1988) (imposing sanctions upon a party for filing a third-party complaint which was not only frivolous but "nearly identical" to an earlier action).

### B

The substantive counts in Morrissey's filing for Ferm are equally baseless.

5. The majority's contention that the district court never resolved the ownership issues is attenuated, at best. Ferm specifically opposed the FSLIC's motion to permit it to take possession of the funds in the clerk's custody, claiming that $489,000 of these funds were hers. To say that the district court did not resolve this question is to say that the court simply disregarded Ferm's opposition. Rather, the record reveals that the district court carefully considered, and rejected, Ferm's claim.

In fact, in awarding sanctions the district court noted that it "necessarily looked" to the earlier orders and proceedings in the case. Judge Stotler stated:

All these claims have pretty mu[ch] been litigated before. The order directing payments of money is presently on appeal, and I believe this is an impermissible collateral attack on a final judgment, and it is barred by collateral estoppel. And I think it's clear, this fact. And for this reason I think sanctions are appropriate.

Judge Stotler obviously thought that she had rendered a judgment with respect to the funds. FSLIC, in its motion, thought there had been an adjudication. Even Ferm, for having appealed from the very order directing payment of the disputed funds, must have thought that a final decision had been made.

### 1

The claim that the FSLIC conspired fraudulently to convey Ferm's money is "wacky, sanctionably so." *See Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). FSLIC's efforts to satisfy its own judgments cannot be "conspiracy" as a matter of law. A civil conspiracy is an agreement by two or more persons to perform a *wrongful* act, or to achieve a lawful result through *unlawful* means. *See Pestin v. Squires*, 156 Cal.App.2d 240, 319 P.2d 405, 409 (1958). The acts of which Ferm complained were performed pursuant to the express orders of the district court, with notice to Ferm and all other parties below. Its conduct could not possibly have been "wrongful" or "unlawful" as a matter of law in those circumstances. *See Western State Bank v. Grumman Credit Corp.*, 564 F.Supp. 9, 19 (D.Mont.1982), *aff'd*, 701 F.2d 187 (9th Cir.1983) (distribution of proceeds to secured creditor not conspiracy because not illegal).

Moreover, Ferm's conspiracy claim is substantively groundless on its face. The purpose of the stipulation for the transfer between New Trend and FSLIC was, obviously, to satisfy partially FSLIC's judgment against Molinaro. The fact of Molinaro's ownership of these funds and FSLIC's entitlement thereto was already resolved by the district court against Ferm. Ferm's attempt to recharacterize the district court's rulings as a "conspiracy" by FSLIC is frivolous beyond doubt. *See Agnew v. Parks*, 172 Cal.App.2d 756, 343 P.2d 118, 123 (1959) ("in a civil conspiracy no cause can arise if one had a legal right to do the act complained of").

### 2

The irony in Ferm's abuse of process claim should be self-evident. To prevail in an abuse of process, one must show that the defendant had an ulterior motive, and performed a willful act to misuse the process to gain a collateral advantage over that person. *See Slaughter v. Legal Process & Courier Serv.*, 162 Cal.App.3d 1236, 1247, 209 Cal.Rptr. 189, 195 (1984). For Ferm to have prevailed on this claim, Ferm would have had to set forth facts that FSLIC intentionally and with the purpose of taking advantage of Ferm used the process in a way that was improper in the regular course of proceedings.

FSLIC served its writ of execution to obtain assets held in the name of "John Cook," Molinaro's alias, to satisfy partially its outstanding judgments against Molinaro. A writ of execution is the proper method of enforcing judgments. Fed.R.Civ.P. 69(a); Cal.Code Civ.Proc. §§ 699.010–699.-080. The district court properly found that Ferm could not, in good faith, plead an ulterior motive on FSLIC's part in the service of its writ of execution because its motive was to satisfy an outstanding judgment under relevant law. *See Ion Equip. Corp. v. Nelson*, 110 Cal.App.3d 868, 876–77, 168 Cal.Rptr. 361, 364–65 (no abuse of process by a party's use of a writ of execution, even if issuance of writ was improper, as no ulterior motive could be inferred).

### 3

The conversion and trespass claims which Morrissey made for Ferm are also frivolous. Conversion is an act of willful interference with personal property, *without lawful justification*, such that a person entitled thereto is deprived of the use and possession of the personal property. *See De Vries v. Brumback*, 53 Cal.2d 643, 647, 2 Cal.Rptr. 764, 767, 349 P.2d 532, 535 (1960). It is not sufficient that the party claiming possession is an owner of the property; she must also have a right to immediate possession. *See Hartford Finan. Corp. v. Burns*, 96 Cal.App.3d 591, 598, 158 Cal.Rptr. 169, 172 (1979). Moreover, an action for conversion will not lie if the person in possession has a right to the property superior to that of the person claiming conversion. *See Stan Lee Trading, Inc. v. Holtz*, 649 F.Supp. 577, 580 (C.D.Cal.1986); *Silverstein v. Kohler & Chase*, 181 Cal. 51, 54, 183 P. 451 (1919). The claims of conversion were without foundation for all of these reasons. Ferm could not, in good faith, argue that FSLIC

acted without "lawful justification" by serving the FBI with a writ of execution to obtain property held in the name of "John Cook," Molinaro's alias. It initiated this writ pursuant to final judgments against Molinaro granted by the district court. FSLIC had ample justification to execute on property concealed in safe deposit boxes under Molinaro's assumed name in these circumstances. Ferm could not, without distorting facts already in the district court's record and ignoring previous district court orders, claim that FSLIC willfully and voluntarily sought to deprive Ferm of property which it knew belonged to her.[6]

To state a claim for trespass to personal property, the person claiming trespass must establish an intentional interference by a person with physical possession of the property belonging to another, without justification or consent, proximately causing the damage. *Itano v. Colonial Yacht Anchorage,* 267 Cal.App.2d 84, 72 Cal.Rptr. 823, 827 (1968). Ferm's claim for trespass was irreparably deficient because Ferm could not plead and prove that FSLIC acted without legal justification in serving a writ of execution on the FBI as discussed above.

Ferm's claim was also baseless because a trespass contemplates the interference with *possession,* not *ownership,* of personal property. *See Allen v. McMillion,* 82 Cal.App.3d 211, 218, 147 Cal.Rptr. 77, 83 (1978). As noted above, the subject assets were in Molinaro's possession because they were held in a safe deposit box under his name alone. Accordingly, Molinaro was in possession of these assets at the time the FBI seized them. Even assuming some sort of trespass was committed, no party interfered with Ferm's possession of personal property, and accordingly Ferm had no standing to bring a trespass claim. Her assertions to the contrary were nothing short of frivolous.

### III

The Supreme court identified several drawbacks inherent in a non-deferential ap-

pellate review of a district court's Rule 11 determinations, *see Cooter & Gell,* —— U.S. at ——, 110 S.Ct. at 2460, and each of these difficulties is present in the majority's disposition today.

The majority disposition has the effect of "establishing circuit law in a most peculiar, second-handed fashion." *Id.* It detracts from the district court's "ability to control the litigants before them," *id.,* a particularly troublesome result here. Finally, and most significantly, the majority's rationale seriously undercuts Rule 11's deterrence objectives. *See id.* at 2454 ("Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the rule's central goal of deterrence.") (citation omitted).

Judge Stotler admirably and judiciously applied Rule 11 in a measured manner in this thorny litigation. Our response should be approval and encouragement, not reversal, in this ongoing saga.

I would affirm the district court's imposition of sanctions in all respects.

---

**6.** The district court held Molinaro in civil contempt for, *inter alia,* his concealment of $212,000, and $66,000 in cash and an estimated $100,000 to $200,000 in gold, diamonds, and jewelry in a safe deposit box at the Los Gatos Wells Fargo Bank. This contempt order necessarily found that Molinaro owned these assets. It could not have held him in contempt for concealing the assets of another person.