[Civ. No. 25869.   Second Dist., Div. Three.   Sept. 28, 1962.]

RICHARD C. WONG et al., Plaintiffs and Appellants, v. PAINE, WEBBER, JACKSON & CURTIS, Defendant and Respondent.

Harry M. Irwin for Plaintiffs and Appellants.

Stephens, Jones, La Fever & Smith, Eugene W. Bell and Donald P. Clark for Defendant and Respondent.

SHINN, P. J.—The crucial question upon this appeal is the following: Was the measure of damages for conversion of corporate stock, which was available for purchase upon stock exchanges, to be computed at $35.125 per share, its value at the date of conversion, or at $96.875, its value eight months later. Arbitrators duly appointed to decide this and other questions used the former figure in computing plaintiffs' damages and awarded them $575. Plaintiffs moved the court to amend the award by increasing it to $13,355, based upon the higher valuation. The motion was denied; the order was treated by the parties as an affirmance of the award, and plaintiffs have appealed.

Under the terms of the arbitration agreement the arbitrators were to render a decision in accordance with California law, the question whether the law had been correctly applied being subject to review by the court.

The following material facts were found by the arbitrators. Defendant, a copartnership, was a stock broker and plaintiffs were its customers, trading on a margin account, under a contract reading in part as follows: "Reports of the execution of orders and statements of my accounts shall be conclusive if not objected to in writing, the former within two days, and the latter within ten days, after forwarding by you to me by mail or otherwise." All the transactions were under and pursuant to the quoted provisions of the contract.

March 23, 1959, plaintiffs placed with defendant two orders of 200 shares each for the purchase of American Motors stock at $32.125 per share; March 23, 1959, defendant notified plaintiffs by mail that both orders had been executed; March 28, 1959, defendant claiming that only one order had been received, and that one confirmation was in error, gave notice to plaintiffs cancelling the same and did not purchase the stock; March 30, 1959, plaintiffs demanded delivery of the 200 shares in question, which demand was, and ever since has been refused; the market value of American Motors on March 30, 1959, was $35.125 per share and on November 4, 1959, it was $96.875 per share. On October 10, 1959, plaintiffs sold 1,440 shares, which was all their American Motors stock, at $46.875 per share.

We may notice first defendant's contention that there

was no conversion of the stock for the reason that it was not purchased for plaintiffs' account. This contention is untenable.

Plaintiffs did not object after receiving written notice of the execution of the two orders and, therefore, were bound to pay for 400 shares of stock. Since plaintiffs were obligated to pay for the stock, defendant was obligated to deliver it. However plausible may have been defendant's contention that the second confirmation was issued in error, the arbitrators were warranted in disregarding this contention and in giving full effect to the provisions of the contract we have quoted, under which, upon the facts in evidence, each party was precluded from questioning the conclusiveness of the confirmations issued by defendant.

Defendant relies upon and quotes authority for the rule that the statement of an account may be corrected upon a showing of error and mistake therein. This rule has no application where the parties have contracted that they shall be bound by and precluded from questioning the existence of certain facts established or to be established in a certain manner.

The right of the parties to contract with respect to the conclusiveness of statements of transactions had would seem to be particularly applicable to transactions between stock brokers and their customers when dealing with securities of fluctuating value.

Upon the question whether the damages should be computed upon the basis of the value of the stock on the date of its conversion or upon its value some eight months later, as plaintiffs contend, the rule which governs is found in present section 3336 of the Civil Code.

Prior to 1931, the section read: "The detriment caused by the wrongful conversion of property is presumed to be: First—The value of the property at the time of conversion, with the interest from that time, or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and Second—A fair compensation for the time and money properly expended in pursuit of the property." As amended, it read: "The detriment caused by the wrongful conversion of personal property is presumed to be: First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party

injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and Second—A fair compensation for the time and money properly expended in pursuit of the property.''

Plaintiffs are relying upon the section as it read prior to the amendment, as if the amendment accomplished nothing. It is an untenable position.

The amendment deprived the complaining party of the unqualified right to choose, as the basis for his damages, the highest value of the property between the date of the conversion and the trial. That was the very purpose of the amendment.

As early as 1873 in *Baker* v. *Drake*, 53 N.Y. 211 [13 Am. Rep. 507], 66 N.Y. 518 [23 Am.Rep. 80], the court pointed out the inequity of the rule as it formerly prevailed in California. In 1916 the author of an article in 4 California Law Review, page 246, emphasized the injustice of the rule, and stated cogent reasons for its amendment. He stated that with respect to stocks of fluctuating value to suppose that one would carry the property through all its fluctuations until the highest point would attribute to him supernatural shrewdness. The Legislature adopted this view in 1931. The facts of the present case graphically illustrate the harshness of the former rule and the reasons for the amendment. They also illustrate a situation in which the one seeking damages is not entitled to recover more than the amount of a loss that would not have been averted in the exercise of a proper degree of prudence.

On March 30, the date of the conversion, plaintiffs could have purchased the stock at $35.125 per share. Defendant would have been indebted to them for $575, the amount of the increase over $32.125 per share. If plaintiffs had purchased the 200 shares they would have run the risk of a loss if the price went down. They decided not to run this risk and did not buy the stock. Under the former rule, as plaintiffs construe it and seek to have it applied, they stood only to gain. If the price went down they could hold defendant to an accounting at $35.125 per share. If the price increased prior to the trial, as it did, defendant would have to pay them a profit of $60 per share, and this, despite the fact that plaintiffs sold all their stock at $46.875 per share less than a month before it advanced to $96.875 per share.

The plain meaning of amended section 3336 is that the wronged party is precluded from recovering the amount

of a reasonably avoidable loss. He is, therefore, placed under the burden of proving the unavoidability of the loss for which he claims reimbursement.

The decision of the arbitrators implies a finding that in the exercise of a proper degree of prudence plaintiffs would have purchased the stock on March 30 at $35.125 per share, and have recouped their loss by charging it to defendant. Plaintiffs do not deny that this would have been the prudent thing to do. They merely deny that they had a duty to do anything. They do not discuss the meaning of the amendment; they simply ignore it. They contend that it has been construed by the courts as permitting the recovery of damages based upon the highest price between the date of the conversion and the trial and they cite for this proposition *Betzer* v. *Olney,* 14 Cal.App.2d 53 [57 P.2d 1376], *Friedman* v. *Renz,* 31 Cal.App.2d 71 [87 P.2d 386] and *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156 [260 P.2d 156]. None of these cases lends support to their contention.

Upon the facts found by the arbitrators, clearly within their powers, the award was in accordance with the law of California and was properly affirmed by the court.

The order is affirmed.

Ford, J., concurred.

Files, J., concurred in the judgment.