**STAN LEE TRADING, INC., Plaintiff,**

v.

**Agnes HOLTZ and Chains West, Inc., Defendants.**

**CV 84–7616 WJR.**

United States District Court, C.D. California.

Dec. 3, 1986.

578

Ruthe Jacobson, Los Angeles, Cal., for plaintiff.

Stephen A. Spataro, Spataro & Willens, Los Angeles, Cal., for defendants.

REA, District Judge.

Plaintiff Stan Lee Trading, Inc. claims that defendants Chains West, Inc. and Agnes Holtz converted 5603.40 pennyweight (dwt) of fourteen karats fine gold wire that belonged to the plaintiff.[1] The Court has jurisdiction over this controversy due to the diversity of citizenship of the parties. 28 U.S.C. § 1332. At the time relevant to this action, Stan Lee Trading, Inc. was a corporation incorporated under the laws of Texas with its principal place of business in Dallas, Texas. Defendant Chains West, Inc. was a corporation incorporated under the laws of California with its principal place of business in Beverly Hills, California. The amount in controversy exceeded $10,000.

*I. Background*

Beginning in 1983, plaintiff Stan Lee Trading, Inc. ("Stan Lee") and defendant Chains West, Inc. ("Chains West") entered into a business relationship whereby Chains West fabricated gold wire into gold chain for use by Stan Lee in the latter's jewelry trade. Stan Lee had an open account with gold wholesalers I. Stern, a

---

1. Plaintiff, as noted below, also complained that the defendants breached a contract by failing to manufacture the gold wire into chain. Plaintiff waived this claim, however, and thus this decision concerns only whether defendants are liable for conversion.

division of Stern Metals, Inc., and Stan Lee directed I. Stern to send gold wire as needed to Chains West for the latter to work on. Upon receiving gold wire from I. Stern, Chains West credited Stan Lee's gold account with the appropriate weight of gold received. When Chains West finished fabricating a given lot of gold chain, it shipped this to Stan Lee and debited the gold account. Stan Lee then paid Chains West the dollar value of its labor. When Stan Lee sent cash payments to Chains West, the latter debited a labor account.

In September, 1983, David Holtz, the sole shareholder and the individual primarily responsible for the running of Chains West, died, leaving the business in the hands of his wife, Agnes Holtz. At the time, and at all subsequent times relevant in this action, Ms. Holtz was an officer and director of Chains West and the person primarily responsible for its operations. Chains West only had one other employee. After Mr. Holtz's death, the company began to run into financial difficulties.

As Chains West's accounts show, on May 4, 1984, Stan Lee had directed I. Stern to ship 5,603.40 dwt more of gold wire to Chains West than the latter had returned to Stan Lee as fabricated chain. Chains West sent no fabricated chain to Stan Lee after May 1, 1984. At the end of 1984, Chains West ceased operations with its accounts still showing a credit balance of 5603.40 dwt in its gold account with Stan Lee. Chains West is now insolvent.

Stan Lee's complaint alleged that defendant Chain West and Agnes Holtz were both liable for breach of contract in failing to provide fabricated gold or return the gold wire. The plaintiff's real interest in the suit has been to win judgment against Ms. Holtz, however, as Chains West is insolvent. Stan Lee acknowledged that the fabrication contract was strictly with Chains West only, but that the Court should hold Ms. Holtz bound to the contract as the corporation's alter ego.

Chains West admitted liability on the breach of contract, but Ms. Holtz denied that she should be held liable on the contract as the corporation's alter ego. This issue became moot, however, as plaintiff expressly waived the breach of contract claim at the start of trial and proceeded only on a theory of conversion.

The plaintiff claims that it sent specific, identifiable gold wire, to which it retained title, to Chains West. Plaintiff argues, in effect, that it did not send the gold wire as a payment or consideration for Chains West's performance. The only consideration for this performance was cash payments for the defendant's labor. The gold was provided solely to facilitate Chains West's performance. Plaintiff thus claims that in failing to return 5603.40 dwt of gold wire or chain, defendants have converted its property. Stan Lee argues that Ms. Holtz should be personally liable for this conversion because she was the agent who directed the corporation to commit the conversion.

Defendants claim that the relationship between Stan Lee and Chains West with respect to the gold wire was only that of creditor and debtor. In effect, Stan Lee lent gold to Chains West as part of the consideration for Chains West's agreeing to fabricate gold chain for Stan Lee. When plaintiff lent this gold, it consented to defendant treating the gold as fungible with all other of defendant's sources and did not retain title to specific, identifiable property. Defendants conclude that when Chains West went out of business with a credit balance in its gold account with Stan Lee, defendants only defaulted on a debt—a breach of contract which does not constitute a conversion.

## II. Defendants Converted Plaintiff's Property

A federal court hearing an action based solely on diversity of citizenship must apply the law of the state in which the Court sits, including the state's conflicts of law rules. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There is a potential conflicts of laws problem in this case as defendant's residence,

the location where the tort occurred, and the forum are in California and the plaintiff's domicile and residence is in Texas. In such circumstances, if the laws of California and Texas differ, California analyzes "the respective interests of the states involved ... to determine the law that most appropriately applies to the issues involved." *Hurtado v. Superior Court of Sacramento County*, 11 Cal.3d 574, 580–81, 114 Cal.Rptr. 106, 112, 522 P.2d 666, 672 (1974); *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967).[2] It is only necessary to engage in a governmental interests analysis, however, when the laws of respective interested states differ. Otherwise, there is no conflict of laws question. *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. at 112, 522 P.2d at 672.

Texas and California tort law apparently does not conflict on the standards for conversion. The parties have not extensively briefed the issue, but they have both represented to the Court that California law governs this controversy. The Court accepts this representation as a waiver of the argument that Texas law differs and should apply here. Accordingly, the Court relies on California statutes and cases.

■ Under California law, "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Hartford Financial Corp. v. Burns*, 96 Cal.App.3d 591, 598, 158 Cal. Rptr. 169 (1979). "To maintain a conversion action 'it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was *entitled to immediate possession at the*

*time of conversion.'* " *Id.* (citation omitted) (italics original).

■ To find Chains West or Ms. Holtz liable for conversion, the Court must initially find that plaintiff Stan Lee had a right to immediate possession of a specific, identifiable *res*. Gold, like currency, is a fungible store of value, but this fungibility does not preclude finding that plaintiff has title to and rights to possess a given, identified quantity of gold or currency. A plaintiff may give possession to a fungible item to a defendant with the understanding that the defendant is not acquiring title but only a right of temporary possession. *See Otworth v. So. Pacific Transportation Co.*, 166 Cal.App.3d 452, 458, 212 Cal.Rptr. 743 (1985). This was the understanding of the parties. As the accounts reflect, Chains West did not receive title to gold shipped by Stan Lee's agent, but instead had a duty to keep account of that gold and to return the same quantity.

■ To find a conversion, the Court must further find that defendants asserted dominion or control over the 5603.40 dwt of gold contrary to plaintiff's rights to possession. Plaintiffs granted defendants a right to possess the gold, but defendants' right was limited to possession to make chain for the plaintiff. When defendants did not timely deliver fabricated chain, plaintiff reasonably began to doubt that defendants were possessing the gold for the intended purpose. Accordingly, plaintiff lawfully revoked defendant's right to possession and demanded the gold back.[3] Defendant's failure to honor this demand constituted conversion. Cal.Civ.Code § 1712 (West 1985).[4]

---

**2.** The conflict of laws test announced by the California Supreme Court in *Reich v. Purcell* is known as the "governmental interests approach." In *Reich*, the court renounced the common law conflicts approach in torts cases of applying the law of the forum where a tort occurred. Thus, this Court cannot assume that because the tort in this case was perpetrated in California by a California defendant, that California law governs the controversy.

**3.** There is unrebutted evidence that plaintiff made numerous demands on defendants for the

return of the gold. However the dates of such demands were uncertain. The court construes the date of conversion to be the date of the filing of defendants' answer.

**4.** California Civil Code § 1712 provides:
One who obtains a thing without the consent of its owner, or by a consent afterwards rescinded, or by an unlawful exaction which the owner could not at the time prudently refuse, must restore it to the person from whom it was thus obtained, unless he has acquired a title thereto superior to that of such other

*III. Agnes Holtz is an Agent Personally Liable for the Corporation's Conversion*

 It is well-settled that an agent of a corporation who directs the corporation to commit a tort is personally liable for the tort. *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 404, 598 P.2d 45, 57 (1979); *United States Liability Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 595, 83 Cal.Rptr. 418, 463 P.2d 770 (1970). Ms. Holtz was one of two employees of Chains West and the only officer and director participating in the corporation's management after her husband's death in September 1983. The Court finds that between May 4, 1984, when Chains West's accounts showed a credit balance in Stan Lee's favor of 5603.40 dwt of gold, and the filing of answer to this lawsuit on December 7, 1984, Ms. Holtz was the only person who could have directed the gold's conversion.

*IV. Damages*

 California Civil Code section 3336 provides, in part, that damages for a conversion are "[t]he value of the property at the time of conversion." *See Strutt v. Ontario Sav. and Loan Ass'n,* 28 Cal. App.3d 866, 105 Cal.Rptr. 395 (1972). The time of conversion is controversial in this case. Generally, this moment occurs when a defendant exercises dominion and control over the plaintiff's property inconsistent with the latter's title. *See Wong v. Paine, Webber, Jackson & Curtis,* 208 Cal.App.2d 17, 24 Cal.Rptr. 821 (1962); *Dagget v. Gray,* 110 Cal.3d 169, 42 P. 568 (1895). The plaintiff offered no evidence that would allow this Court to determine the date when defendants exercised dominion and control over the plaintiff's gold.

 This alone does not bar the Court from fixing a time of conversion; often a plaintiff will not know exactly when a defendant exercised dominion and control over its property and yet the courts have found a time of conversion. *See Russell v. United Pacific Ins. Co.,* 214 Cal.App.2d 78,

person, or unless the transaction was corrupt

29 Cal.Rptr. 346 (1963); *Everfresh, Inc. v. Goodman,* 131 Cal.App.2d 818, 281 P.2d 560 (1955). When a defendant refuses a lawful demand for the return of property, this can serve as the instant of conversion—for then, if there had been doubt, the defendant is clearly asserting dominion and control. *See Dagget v. Gray,* 110 Cal. at 171, 42 P. 570 ("A demand and refusal does not of itself constitute conversion but it is only evidence from which conversion in certain cases may be found.")

The plaintiff unfortunately offered meager evidence when demand and refusal occurred. The plaintiff called David Orman, Stan Lee's president, who testified that he made repeated demands during June 1984 and thereafter for the return of his company's gold, and defendants refused these requests. Defendants offered no rebuttal evidence and the Court accepts the fact that these events occurred. The Court finds this testimony unhelpful, however, because Mr. Orman neither recalled nor offered documents establishing a precise date either of a demand being made or refused. The defendants urge that plaintiff is therefore barred from recovery by failing to prove the time of conversion. The defendants argue that without knowing the time of conversion, the Court cannot calculate damages.

 The Court rejects the defendants' argument and finds that the date defendants answered the complaint denying liability for conversion was the time of conversion. The Court has been unable to find any authority directly on point, but finds some assistance in a case decided in 1895, *Dagget v. Gray.* At the time *Dagget* was decided, and today, when a defendant originally possesses property lawfully, a plaintiff ordinarily must demand his or her property's return before claiming that a conversion has occurred. *See Wong,* 208 Cal.App.2d 17, 24 Cal.Rptr. 821. *Dagget,* however, held that a failure to make a demand is no obstacle to plaintiff's action when a defendant answers in its pleadings that it will not return the property in ques-

and unlawful on both sides.

tion. 110 Cal. at 172. In such circumstance, the defendant's pleading supplies the missing element of the plaintiff's case. Though *Dagget* is an old case, this remains good law. *Id.*

Defendants' answer in this case, filed on December 7, 1984, indicated that they would not return the 5603.40 dwt of gold but would instead contest plaintiff's right to its immediate possession. The effect of the *Dagget* rule is to allow plaintiff to use defendants' pleading as the functional equivalent of a demand and refusal. Refusing a just demand is one way that a defendant can exercise dominion and control over a plaintiff's property. Thus, the Court finds that in filing their answer, defendants exercised dominion and control over the plaintiff's gold on December 7, 1984.

There is still a further difficulty, however. Plaintiff introduced no evidence of how much the gold was worth on December 7, 1984, the date defendants filed their answer. Indeed, the plaintiff offered insufficient evidence of the gold's worth at any time. Plaintiff called its president, Mr. Orman, to testify that in his opinion the gold was worth approximately $66,000 at the time he demanded its return in June 1984. The Court cannot, however, rely upon Mr. Orman's statements. He is not an expert in the value of gold and his opinion statements were not limited to inferences rationally based on the perceptions of the witness. Fed.R.Evid. 701, 703.

The Court can, however, take judicial notice pursuant to Federal Rule of Evidence 201 of the value of the gold on December 7, 1984. There can be no reasonable dispute that there is an established market for gold worldwide and that the daily price of gold in precious metal markets in New York and London are published in various newspapers. The accuracy of the financial pages of the nation's major newspapers cannot reasonably be questioned.

On any given day, the prices of gold offered by various metals dealers vary somewhat, but their deviation is small. On December 7, 1984, the A.M. price for twenty-four karats fine gold quoted by the London Gold Fixing was $330 an ounce and the P.M. price was $327. In New York, the Handy and Harman price was also $327 and the Englehard Industrial Bullion price was $327.40. The Court finds that the plaintiff's gold must have been worth at least as much as the lowest of these quotes. It is appropriate to be cautious given the plaintiff's absence of proof, and the Court deems the lowest of these quotes as the value of plaintiff's gold. The value of the plaintiff's gold can be easily calculated from the quoted ounce price of $327.[5] An ounce of gold contains 20 dwt. Defendant thus possessed 280.17 ounces of plaintiff's gold. This gold, however, was fourteen karats fine rather than twenty-four. To find the equivalent value of fourteen karats fine gold, the price of twenty-four karat gold must be multiplied by .583. The sum is $53,411.89, and the Court awards plaintiff this amount.

## V. Prejudgment Interest

California Civil Code section 3336 provides that a plaintiff is entitled in a conversion action to prejudgment interest at the legal rate from the time of conversion to the date judgment is entered. The legal rate of interest in California, absent a statute to the contrary (and there is none here), is seven percent per annum. Cal.

---

5. The gold prices quoted in the precious metals markets mentioned are for gold bullion. The plaintiff's gold, however, was in the form of gold wire of various gauges. The Court nevertheless finds that it can appropriately rely on these quoted prices. Gold has an intrinsic value that is only increased, not decreased, by fabrication of the metal into a product such as gold wire. Moreover, the prices quoted by the London Fixing or by brokers such as Handy & Harman or Englehard are the lowest prices offered to large purchasers. (The prices published in financial pages are for 100 ounce bars). Thus, the quoted prices reflect the minimum value of the plaintiff's gold. Plaintiff would have been entitled to a higher damage recovery if it had offered expert testimony of how much above the bullion price its gold wire was worth. The Court, however, cannot take judicial notice of this higher value and thus relies on the indisputable minimum intrinsic value of the gold.

Const. art. XV, § 1; *Pacific-Southern Mortgage Trust Co. v. Ins. Co. of North America,* 166 Cal.App.3d 703, 716, 212 Cal. Rptr. 754. Accordingly, the Court awards plaintiff $7,440.27 in interest for the period of December 7, 1984 to December 3, 1986.

### ORDER

In accord with the above memorandum of decision,

IT IS HEREBY ORDERED that the plaintiff, Stan Lee Trading, Inc., recover of the defendants Agnes Holtz and Chains West, Inc., the sum of $53,411.89, plus interest thereon in the additional sum of $7,440.27, and its costs of action.