UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 19 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAG AEROSPACE INDUSTRIES, LLC,
DBA Zodiac Water & Waste Aero Systems,

Plaintiff-Appellee,

v.

PRECISE AEROSPACE
MANUFACTURING, INC.,

Defendant-Appellant.

No. 19-55932

D.C. No. 5:18-cv-01096-RGK-JC
Central District of California,
Riverside

ORDER

Before:  SILER,[*] HURWITZ, and COLLINS, Circuit Judges.

The memorandum disposition filed on April 26, 2021 is amended by

replacing the sentence on page 9 that reads "The posting of that undertaking did

not affect the district court's finding that Precise's possession was wrongful and

that MAG was entitled to the return of the molds," with the following:

> The posting of that undertaking did not preclude the district
> court from finding that Precise's subsequent possession was
> wrongful and that MAG was entitled to return of the molds.

The amended memorandum disposition is filed concurrently with this order.

With this amendment, the panel has unanimously voted to deny the petition

for rehearing, filed May 7, 2021 (Dkt. No. 71).  No further petitions for rehearing

will be entertained.

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of
Appeals for the Sixth Circuit, sitting by designation.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

MAY 19 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAG AEROSPACE INDUSTRIES, LLC,
DBA Zodiac Water & Waste Aero Systems,

Plaintiff-Appellee,

v.

PRECISE AEROSPACE
MANUFACTURING, INC.,

Defendant-Appellant.

No. 19-55932

D.C. No. 5:18-cv-01096-RGK-JC

AMENDED
MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 1, 2021
Pasadena, California

Before:  SILER,** HURWITZ, and COLLINS, Circuit Judges.

Precise Aerospace Manufacturing, Inc. ("Precise") appeals the judgment

entered against it after a bench trial in this diversity action filed by MAG

Aerospace Industries, LLC ("MAG"), which asserted claims for conversion,

negligent interference with prospective economic relations, and breach of contract.

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of
Appeals for the Sixth Circuit, sitting by designation.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

MAG manufactures water-and-waste systems for commercial airplanes built by original equipment manufacturers, such as Boeing and Airbus. Precise specializes in precision manufacturing of plastics for the aerospace and defense industries. In late 2012, MAG contracted with Precise to manufacture injection-molded plastic component parts for MAG's systems. MAG supplied unique "molds" so that Precise could manufacture these parts to MAG's specifications. Precise also agreed to produce additional molds for MAG. MAG used the parts Precise provided to assemble water-and-waste systems for its customers.

The current litigation arises from Precise's possession of 102 MAG molds. After disputes arose between MAG and Precise, MAG placed orders with another supplier to duplicate dozens of the molds and filed this action. After a bench trial, the district court entered judgment in favor of MAG on its conversion and breach-of-contract claims in the amount of $1,317,315.78. It rejected MAG's claim for interference with prospective economic relations. Precise timely appealed.

1. The district court erred in awarding $29,879.88 for the conversion of mold number 77000-505-607 ("Mold 607") in "Mold Duplication Group 2."[1]

---

[1] For purposes of this litigation, the parties and the district court categorized the duplicated molds into four groups, and we follow the same taxonomy. Mold Duplication Group 1 is not at issue in this appeal.

Liability for conversion requires *wrongful* possession of the plaintiff's property, *see Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015), and there is no such proof as to Mold 607.

Neither party disputes that Precise was initially in lawful possession of Mold 607 in order to fulfill MAG's parts orders. After Precise refused to honor some of MAG's purchase orders, MAG sent an email to Precise on November 9, 2017 demanding the return of certain molds listed by identification number. After Precise did not immediately return those molds, MAG ordered duplicates of several molds, including Mold 607, from a third party. The district court clearly erred in finding that Mold 607 was among those listed in the November 9, 2017 email. MAG admits as much, but it claims that an affidavit filed in a separate suit confirms that it demanded the return of Mold 607 on November 27, 2017. But because that affidavit was not introduced as evidence in this case, we decline to consider it.[2] *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("Appellate courts 'generally will not consider facts outside the record developed before the district court . . . .'"). Because the trial record does not show that MAG demanded return of Mold 607 prior to ordering its duplicate on December 22, 2017, we reverse the award of $29,879.88 for conversion of Mold 607.

2. With regard to Mold Duplication Group 3, the district court's findings do

---

[2] Accordingly, both sides' motions for judicial notice (Dkt. Nos. 32, 40) are denied.

not support its conclusion that all of MAG's efforts to mitigate its damages flowing from Precise's breach of its contracts with MAG were reasonable.

a. In January 2018, in the midst of their various disputes, MAG and Precise met and orally agreed that MAG would place a final round of new purchase orders with Precise. MAG placed the orders, and Precise began fulfilling them using MAG's molds. However, in May 2018, Precise insisted it now owned the molds, and Precise initiated a shipment hold because MAG was late on payments. MAG immediately sent the late payments. Precise, however, did not lift the shipment hold and failed to deliver several parts by their delivery dates. On May 23, 2018, MAG ordered several additional duplicate molds from another supplier. On June 11, 2018, MAG applied for a preliminary injunction and a writ of possession. And then, on July 4, 2018, MAG ordered another few dozen molds from a third party. On July 18, 2018, the district court entered a preliminary injunction, ordering Precise to lift the shipment hold and to perform its obligations with respect to MAG's existing purchase orders. The next day, Precise shipped the parts subject to the shipment hold to MAG.

The district court concluded that "MAG's untimely payments were not serious enough to release Precise from its duty to perform under the purchase orders." Because Precise was "still required to perform on the terms of the purchase orders," the court reasoned, Precise anticipatorily breached the contract

4

when it initiated the shipment hold. On appeal, Precise only contests the district court's finding that MAG's decision to duplicate certain molds constituted a reasonable attempt to mitigate damages. Based on that finding, the district court awarded MAG the total cost for producing these replacement molds, $903,735.

b. Under California law, "an injured party who makes a reasonable attempt to mitigate his damages is allowed to recover the cost of such reasonable mitigation effort as damages from the party who breached the contract." *Brandon & Tibbs v. George Kevorkian Acct. Corp.*, 277 Cal. Rptr. 40, 52 (Cal. Ct. App. 1990). The question is not, as Precise argues, whether "the damages incurred by [MAG] in mitigating [its] losses exceeded the damages to be saved by the mitigation attempt." Rather, the question is "whether the sums expended were reasonable in amount and expended in good faith for purposes of mitigating the losses inflicted." *Id*. at 53–55. Under California law, whether MAG reasonably mitigated its damages is a question of fact, *Ortiz v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 852 F.2d 383, 387 (9th Cir. 1987), and in this appeal from a bench trial, we therefore review for clear error, *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 612 (9th Cir. 2020).

Precise argues that "MAG knew the duplicate molds . . . could not possibly yield new parts in time to meet its customers' deadlines." MAG argues that the district court did not clearly err in awarding the total cost of the molds. Both of

5

these arguments are couched in all-or-nothing terms: Precise argues it was unreasonable to duplicate all of the molds, and MAG argues it was reasonable to duplicate all of the molds.  Neither position finds support in the record.

For example, at least some of the molds that MAG ordered do not appear to be associated with any of the part numbers listed in the purchase orders that were the subject of Precise's shipment hold.  If they were not, the ordering of such molds could not have been a reasonable effort to mitigate damages *resulting from the shipment hold*.  On the other hand, Precise is wrong in contending that it was clear error to find that *any* of the molds could have "yield[ed] new parts in time to meet [MAG's] customers' deadlines."  For example, MAG presented evidence showing that, with respect to duplicate mold 77000-505-604, which was ordered on May 23, 2018, MAG needed parts associated with that mold by August 30, 2018 in order to meet its customer deadlines.  The purchase order for this duplicate mold lists a requested delivery date of July 25, 2018; that delivery timeline was consistent with a MAG executive's estimate concerning expedited production timelines.  MAG therefore could reasonably have thought that the mold could produce the needed parts by the August 30 need date (or perhaps by a slightly later date negotiated with its customers).

Given that the record does not support either side's all-or-nothing position, we remand to the district court to analyze the reasonableness of each specific duplication order for Mold Duplication Group 3.

c.  We reject Precise's alternative argument that the district court erred in finding that, by the time Precise shipped the late parts on July 19, 2018, MAG could not have cancelled the orders without incurring the full cost.[3]  There was evidence from which the district court *could* have reasonably inferred that the orders were cancellable.  But the district court's contrary conclusion was not clearly erroneous.  MAG paid a 50-percent down payment on each of the duplicate molds ordered, and a MAG executive testified that these were "firm purchase orders" for which "MAG would be obligated" for the full cost.  Viewing the trial evidence as a whole, we cannot say that the district court's finding was "illogical, implausible, or without support in inferences from the record."  *Oakland Bulk*, 960 F.3d at 613.

d.  Precise argues that, because it ultimately returned the original molds to MAG, it is entitled "to an offset for the value of either the original molds or the duplicate set MAG obtained."  We disagree.  Under California law, the "general rule of compensatory damages bars double recovery for the *same* wrong."  *Krusi v.*

---

[3] The district court's finding about cancellation refers to "July 19, 2019" instead of July 19, 2018.  This was an obvious scrivener's error, and we reject Precise's efforts to take advantage of the error.

7

*Bear, Stearns & Co.*, 192 Cal. Rptr. 793, 798 (Cal. Ct. App. 1983) (emphasis added). With respect to Mold Duplication Group 3, the wrong was not a conversion of the molds, but Precise's refusal to ship *parts* in violation of its contractual obligations. As a result, the $903,735 spent to duplicate these molds were *not* damages for the value of "converted" property that was later returned. Rather, they were *consequential* damages: as the district court found, MAG would not have duplicated the molds "[h]ad Precise not indefinitely halted shipment." The subsequent return of the molds that MAG duplicated in this group thus did not eliminate the already-incurred consequential damages for Precise's breach of contract. There was no double recovery.

3. As to Mold Duplication Group 4, the district court did not err in finding that Precise converted 10 molds that MAG duplicated, but we remand for the district court to consider whether, under California law, the cost of the duplicate molds should be offset by the value of the returned original molds.

On January 11, 2019, MAG demanded the return of 10 specific molds for which it had no open parts orders with Precise. After Precise refused to return those molds, MAG ordered duplicates on January 14 and 15, 2019. At trial, the district court found that Precise converted those molds and awarded the "total duplication cost," $383,700.90.

a. Precise contends that it did not wrongfully possess seven of these molds

8

because, after the district court on July 18, 2018 granted MAG's application for a writ of possession as to 52 specific molds without open purchase orders, Precise posted a bond that allowed it to retain them. But the posting of an undertaking under California Code of Civil Procedure § 515.020 merely prevented the district court's order from taking immediate effect, thus precluding the Sheriff of Los Angeles County from levying on and seizing the 52 molds. The posting of that undertaking did not preclude the district court from finding that Precise's subsequent possession was wrongful and that MAG was entitled to return of the molds. Indeed, the whole point of an undertaking is precisely to ensure that funds will be available to cover damages associated with deferring enforcement of the opposing party's rights. *See* CAL. CIV. PROC. CODE § 515.020(b) (undertaking must cover damages "sustain[ed] by reason of the loss of possession of the property"). Precise's argument that the undertaking somehow *absolved* it of liability for conversion fails.

b. Alternatively, Precise argues that, with respect to Mold Duplication Group 4, MAG failed to carry its burden to show "the unavoidability of the loss for which [it] claims reimbursement." *See Wong v. Paine, Webber, Jackson & Curtis*, 24 Cal. Rptr. 821, 824 (Cal. Ct. App. 1962) (noting that this is an element of a conversion claim). According to Precise, "MAG could have avoided the costs of duplicate molds by accepting Precise's offer to make parts." But a plaintiff is only

9

expected to take "reasonable" measures to mitigate damages. *Green v. Smith*, 67 Cal. Rptr. 796, 799–800 (Cal. Ct. App. 1968). Because Precise already had breached multiple contracts with MAG and wrongfully refused to return MAG's molds, the district court properly concluded that it was reasonable for MAG, at that point, not to enter into yet another contract with Precise. Precise again argues that "MAG could have also avoided the costs to duplicate the molds by cancelling the orders for the duplicates once Precise returned the originals," but we find no clear error in the district court's rejection of this contention.

c. Again, Precise argues that, because it ultimately returned the original molds to MAG, it is entitled "to an offset for the value of either the original molds or the duplicate set MAG obtained." We rejected this argument for Mold Duplication Group 3, because the damages for that group were awarded as consequential damages flowing from a breach of contract. *See supra* § 2.d. But the measure of damages for a conversion claim is not necessarily the same as for a breach-of-contract claim. The parties appear to disagree about whether the conversion damages awarded on Mold Duplication Group 4 were for loss of use of the original molds or simply for the cost of obtaining replacement molds. They also disagree as to whether there is any applicable offset rule under California law. We are unable to discern the basis for the Mold Duplication Group 4 conversion award and the district court's reasons for rejecting Precise's request for an offset

10

from the order and judgment. Finding the record inadequate for our review, we remand for the district court to re-examine this issue and to make specific findings.

4. Precise also contends that it is entitled to a damages offset for the costs that it incurred in cleaning the molds before returning them to MAG. The district court found, as a factual matter, that "Precise normally cleans molds itself, as part of its 'daily procedure,' and that other customers are not usually charged for mold cleaning," and that MAG does not "pay[] for cleaning in its ordinary course of business." These findings are not clearly erroneous.

**AFFIRMED in PART, REVERSED in PART, and REMANDED.**