Filed 2/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KALVIN KIMBO UNG,<br><br>    Defendant and Appellant. | H049359<br>(Santa Clara County<br>Super. Ct. No. C1807777) |

In 2018, defendant Kalvin Kimbo Ung stole significant quantities of cryptocurrencies from multiple victims. In 2021, he pleaded no contest to identity theft, attempted grand theft, and 10 counts of felony grand theft. He admitted a white collar crime enhancement and admitted he committed three of the offenses after his bail had been revoked. The trial court imposed a total term of 10 years in prison and entered a general order of restitution.

In September 2021, the trial court ordered Ung to make restitution by transferring cryptocurrencies to the victims in the same kinds and amounts he had stolen from them. Ung contends the restitution order was an abuse of discretion and a violation of his due process rights to notice. He estimates the total dollar value of the stolen cryptocurrencies was about $1.56 million when he stole them, and that the dollar value had increased to about $15.9 million by the time of the restitution hearing. Based on this ten-fold increase in the dollar value of the assets, he argues the restitution order constituted an undue windfall for the victims, and he claims the absence of a fixed time frame for setting the dollar value of the restitution failed to give him sufficient notice of his liability.

For the reasons below, we hold the trial court did not abuse its discretion by ordering Ung to make in-kind restitution in the form of cryptocurrency, and it did not violate his due process rights. We will affirm the restitution order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ung used computer fraud to steal various quantities of Bitcoin and other cryptocurrencies from multiple victims during a period from June 2018 to December 2018.[1] He exploited a security feature common to many online financial accounts: A user can prompt a website hosting an account to send a text message to the user's phone with a security code that temporarily allows access to the account. Ung used a technique called "SIM swapping" in which the thief tricks the victim's phone carrier into switching the victim's phone number to a SIM card in the thief's phone, thereby hijacking the victim's phone number. The thief then prompts the website hosting the victim's financial account to send a temporary security code to the hijacked phone number, whereupon the thief accesses the account and transfers the assets out of it.

The prosecution charged Ung with 76 counts including computer fraud (Pen. Code, § 502, subd. (c)(1)(A))[2]; identity theft (§ 530.5, subd. (a)); grand theft of property with a value exceeding $950 (§ 487, subd. (a)); attempted grand theft (§§ 487, subd. (a), 664); misdemeanor petty theft (§ 488); and attempted misdemeanor petty theft (§§ 488, 664). The information further alleged an aggravated white collar crime enhancement and that Ung had committed three of the offenses at a time when his bail had been revoked. (§§ 186.11, subd. (a), 12022.1.)

In 2021, Ung pleaded no contest to one count of identity theft, one count of attempted grand theft, and 10 counts of felony grand theft. He admitted the allegations.

---

[1] The other cryptocurrencies included Bitcoin Cash, Ethereum, Cardano, Monero, and Stellar.

[2] Subsequent undesignated statutory references are to the Penal Code.

2

The trial court imposed a total term of 10 years in prison and entered a general order of restitution.

The probation report included several victims' requests for restitution. The requests varied, but the victims requested either the return of the stolen cryptocurrencies or payments in dollars based on market values at the time in March 2021.

The trial court held a restitution hearing on June 28, 2021. Shortly before the hearing, Ung filed a brief and attached exhibits showing how the dollar values of the cryptocurrencies had increased substantially since the dates of the thefts. He estimated the total dollar value of the cryptocurrencies was about $1.56 million at the times of the thefts. He estimated the value of the cryptocurrencies had increased to about $15.9 million by the time of the hearing in June 2021. Ung requested that the court "use its discretion to order restitution either *in the form of the cryptocurrency taken* or the dollar value of the currency at the time of the takings." (Italics added.)

The prosecutor did not dispute Ung's dollar value estimates. Several victims' restitution requests provided documentation of the cryptocurrencies' values roughly consistent with Ung's estimates.

At the hearing, the prosecutor expressed agreement with the options Ung had proposed in his brief. But when the court invited input from counsel for one of the victims, the attorney pointed out that the dollar value of the cryptocurrencies had increased significantly since the time of the thefts. The victim's counsel argued that his client should not be penalized for being unable to sell his cryptocurrency, and that if the court were to order payment based on the dollar value of the cryptocurrency, the court should select the dollar value at the time of restitution, not the time of the theft. The prosecutor stated she would defer to the victims, and she noted the probation report included victims' requests to be paid with the cryptocurrencies.

Defense counsel then argued for payments according to the dollar values at the times of the thefts. The victim's counsel countered with a request for payment either in

the form of the cryptocurrency or in dollars at the value on the date of the hearing.  At that point, counsel for two other victims joined in the request for payment in cryptocurrency.  The court concluded by stating its intent to order payment in cryptocurrency in addition to several other payments in dollars to reimburse some victims for attorneys' fees.

On September 23, 2021, the court ordered Ung to make restitution to the victims by transferring specific quantities of cryptocurrencies to each victim, matching the kinds and quantities Ung stole from them.[3]  The court also ordered restitution for other dollar amounts, which Ung does not challenge.

## II. DISCUSSION

Ung contends the restitution order was an abuse of discretion because it provided the victims with an undue windfall, and he asserts it violated his due process rights by failing to give him notice of his actual liability.  The Attorney General contends the order does not provide the victims an undue windfall, and he argues Ung bears any risk resulting from market fluctuations in the dollar values of the cryptocurrencies.

### A. Legal Principles

Section 1202.4 provides in part, "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."  (§ 1202.4, subd. (f).)

"The standard of review of a restitution order is abuse of discretion.  'A victim's restitution right is to be broadly and liberally construed.'  [Citation.]  ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse

---

[3] The order excluded a quantity of Bitcoin that law enforcement gained control over during the investigation and which the court had previously ordered returned to the owner.

4

of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

**B. *The Restitution Order Was Neither an Abuse of Discretion Nor a Violation of Due Process***

Ung's claims rely on the premises that the dollar values of the stolen cryptocurrencies increased substantially after he stole them, and fluctuations in the cryptocurrency markets make it difficult to determine future dollar values. That much may be true, but we see no merit in Ung's contention that the order provides the victims with an undue windfall by requiring restitution in-kind. The plain language of section 1202.4, subdivision (f) states restitution is required where the economic loss suffered by victims is a result of the defendant's conduct. By stealing and taking control of the victims' cryptocurrency, Ung deprived them of the ability to sell it for a profit after its value increased; whatever profits they lost were a direct consequence of Ung's conduct. And based on the historical values of the cryptocurrencies as Ung himself documented, the likelihood that victims lost potential profits is more than hypothetical

Ung does not dispute that the quantities of cryptocurrencies he is ordered to return are equal to the quantities of cryptocurrencies he stole. Nor does Ung dispute that these same quantities are based on the losses claimed by the victims. The exhibits in Ung's restitution brief list the quantities of each stolen cryptocurrency, and they are equal to the quantities set forth in the restitution order. And at the hearing, counsel for several victims requested payment in the form of the stolen cryptocurrencies. These facts provide a rational basis for the amounts of restitution ordered.

Ung cites no authority that would require the trial court to order payment in dollars instead of cryptocurrency. As the Attorney General notes, California courts have previously allowed restitution in the form of returning stolen property, and courts may further require that defendants pay additional amounts to compensate victims for losses in

5

the value of the returned property. (See *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1181-1182; *People v. Baker* (2005) 126 Cal.App.4th 463, 468.)

Even if the trial court had ordered payments in dollars instead of cryptocurrencies, the court would take guidance from subdivision (f)(3) of section 1202.4: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. *The value of stolen or damaged property shall be the replacement cost of like property*, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A), italics added.) Here, the replacement cost of the cryptocurrencies would include the increase in dollars required to buy them in the markets at the time of replacement. (See *People v. Stanley* (2012) 54 Cal.4th 734, 738 [no abuse of discretion in ordering defendant to pay repair costs for stolen truck even though the repair costs were three times greater than the original purchase price of the truck]; *People v. Tucker* (1995) 37 Cal.App.4th 1, 6 [no abuse of discretion in restitution order as a condition of probation where the amount was based on the replacement cost including appreciation in the stock price since the time of the embezzlement].) Given market fluctuations, the replacement cost in dollars would depend on exactly when the replacement was made, but the trial court circumvented this problem by ordering Ung to return the cryptocurrencies instead. We see no abuse of discretion in the court's solution to this problem.

As to Ung's claim that uncertainty in the dollar values of the cryptocurrencies violates his due process rights to notice, he cites no authority that would support this proposition. Instead, he cites opinions from California and other jurisdictions ruling on damages in civil cases where plaintiffs allege conversion of assets with fluctuating market values, such as stocks and other marketable securities. (See *Wong v. Paine, Webber, Jackson & Curtis* (1962) 208 Cal.App.2d 17 (*Wong*) [under Civil Code section

6

3336, the wronged party is precluded from recovering the amount of a reasonably avoidable loss].)

In *Wong*, the plaintiffs gave two purchase orders to a broker, each for a separate block of stock. The broker sent the plaintiffs purchase confirmations for both orders, but he only filled one of the orders. Several days later, the broker informed plaintiffs of the error. The broker told them he was canceling the unfilled order and did not buy the stock for them. The plaintiffs demanded delivery of the stock, but the broker refused. Over the next several months, the price of the stock more than doubled, and the plaintiffs sued the broker for the profits they could have made if he had filled the purchase order. The Court of Appeal held that under Civil Code section 3336 the broker was not liable for damages the plaintiffs could have avoided through "a proper degree of prudence." (*Wong*, *supra*, 208 Cal.App.2d at p. 21.) The Court concluded the plaintiffs were not entitled to the claimed lost profits because they could have bought the stock when the broker told them the original order had not been filled. The broker was liable only for the profits the plaintiffs would have lost between the date of the initial order and the date they were told the order was canceled.

Ung struggles to explain the relevance of *Wong* to this matter. Ung does not suggest, and we cannot imagine, what "proper degree of prudence" his victims could have employed to avoid losing profits. Unlike the plaintiffs in *Wong*, the victims' purchases were never cancelled, and they could not recover the money they had spent so they could not use it to repurchase the cryptocurrencies upon noticing the thefts. And if Ung merely reimburses the victims for what they spent, it is now too late for them to earn the same profits from their investments.

Ung infers from the civil case law that courts are required to set restitution according to a time frame that establishes a fixed dollar value for it, but he cites no law or case prohibiting return of the stolen property. He does not claim we should actually apply any of the civil standards he references either. In any event, a trial court is not

7

required to determine restitution based on the amount recoverable in a civil action. (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382.)  "[A]ll that is required is that the trial court 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*Ibid.*)  The trial court's restitution order satisfies that standard.

Ung has failed to show any due process violation.  It is common knowledge that the fluctuating value of cryptocurrency presents substantial risk, and he does not profess ignorance on this point.  He assumed the degree of risk inherent in those assets when he stole them.[4]  And as the Attorney General points out, Ung had notice of this form of restitution because he proposed it in his own restitution brief.

Accordingly, we will affirm the order of restitution.

### III.    DISPOSITION

The restitution order of September 23, 2021 is affirmed.

---

[4] Of course, the victims themselves assumed a certain degree of risk when they asked to receive the cryptocurrencies instead of their dollar values at the time of the hearing.  While cryptocurrency may have been ascendant in June 2021, the vagaries of the market have demonstrated the wisdom of the oft-uttered caveat, "Past performance is no guarantee of future results."  (See, e.g., 17 C.F.R. § 230.156(b)(2) (2023).)

_____

Greenwood, P. J.

WE CONCUR:


_____

Grover, J.


_____

Danner, J.


People v. Ung
H049359

9

Trial Court:                                Santa Clara County Superior Court
                                            Superior Court No: C1807777

Trial Judges:                               The Honorable Elizabeth C. Peterson,
                                            The Honorable Vanessa A. Zecher

Attorneys for Defendant and Appellant       Mark David Greenberg
KALVIN KIMBO UNG:                           under appointment by the Court
                                            of Appeal for Appellant

Attorneys for Plaintiff and Respondent      Rob Bonta,
THE PEOPLE:                                 Attorney General of California

                                            Lance E. Winters,
                                            Chief Assistant Attorney General

                                            Jeffrey M. Laurence,
                                            Senior Assistant Attorney General

                                            Donna M. Provenzano,
                                            Supervising Deputy Attorney
                                            General

                                            Amit Kurlekar
                                            Deputy Attorney General